## J. PAUL KILPATRICK v. WALTER E. EDGE.

Submitted March 1, 1913—Decided November 10, 1913.

1. Where defamatory matter is published which appears only to apply to a class of individuals, yet, if the descriptions in such matter are capable of being, by innuendo, shown to be directly applicable to any one individual of that class, an action may be maintained by him in respect to such publication.
2. A disorderly house includes every house that is so kept as to tend to the corruption of public morals, and the ultimate disturbance of the general good order of the community.
3. Where a published article is susceptible of either of two meanings, one of which renders it injurious to the person concerning whom it is published, and the other makes it harmless, it becomes a question for the jury to determine whether the one meaning or the other was, in fact, conveyed to the readers of the publication.

On demurrer to declaration.

Before GUMMERE, CHIEF JUSTICE, and Justices BERGEN and KALISCH.

For the plaintiff, *Wescott & Wescott.*

For the defendant, *Harry Wootton.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This is an action for libel. The declaration shows that the plaintiff, at the time of the publication of the alleged libel complained of, was the proprietor and owner of the Hotel Rio Grande in Atlantic City, and that this hotel had a Turkish bath connected with it; that the defendant, on the 16th day of March, 1911, in a certain newspaper called the "Atlantic City Daily Press," of which he was the proprietor, falsely and maliciously published of and concerning the plaintiff the following words, to wit: "Charge of orgy in Turkish bath. Startling complaint lodged with license committee of council. Allegation of scandalous

acts. Investigation of alleged practices which it is claimed, are common in a local Turkish bath house, being made by city officials. If the charges are proven to be true there will probably be an immediate revocation of permission to sell liquor on the premises, and criminal action may be taken against the proprietor. * * * According to the complaint, the place in question has a big plunge bath which at certain hours of the day is reserved for ladies. In adjoining rooms, however, there are chairs at which men may sit and peer at the women as they bathe. The women are absolutely unconscious of the espionage, and it is claimed high prices are paid for the privilege of spying. The complainant also states that to his knowledge four weeks ago a party of men and women, ten or twelve in number, were permitted to use the plunge bath of the establishment at the same time, and that the resulting orgy was the worst that has ever been even attempted in the city." The plaintiff charges, by proper innuendoes, that these statements referred to him, and the Turkish bath which is connected with his hotel.

The first ground of demurrer is that there is nothing in the alleged libel which indicates to any one that the plaintiff is referred to in it. We think this ground cannot prevail. The rule with relation to publications of this kind is correctly laid down in the case of *Le Fanu* v. *Malcolmson,* 1 *H. L. Cas.* 637, in the following words: "The defamatory matter may appear only to apply to a class of individuals, yet, if the descriptions in such matter are capable of being, by innuendo, shown to be directly applicable to any one individual of that class, an action may be maintained by such individual in respect to the publication of such matter. In such a case the innuendo does not extend the sense of the defamatory matter, but merely points out the particular individual to whom the matter in itself defamatory does in fact apply." See also, *State* v. *Schmitt,* 20 *Vroom* 579.

It is also contended that the publication does not impute that the plaintiff was guilty of a criminal offence—no offence or crime being, in fact, set forth in the article. We cannot concur in this view of the statement. We think there can be

no doubt but that the proprietor of a Turkish bath, which is patronized by women, who makes a common practice of permitting men to frequent it for the purpose of spying upon these women while they are bathing in a nude condition, is guilty of the offence of keeping a disorderly house. Such a house is not necessarily one which has certain special criminal features caused by a particular kind of unlawful use. A disorderly house, at common law, includes every house that is so kept as to tend to the corruption of public morals, and the ultimate disturbance of the general good order of the community. *Commonwealth* v. *Goodal,* 165 *Mass.* 594; *State* v. *Williams,* 1 *Vroom* 102.

But the defendant asserts there is nothing in the words used which carry with them the meaning attributed to them by the plaintiff in his declaration; that is to say, nothing to suggest that the women who were spied upon were bathing in the nude, rather than in the costumes usually worn in the surf. The words published are, we think, plainly susceptible of the meaning attributed to them. Assuming that another meaning, and one which is harmless, may also be fairly imputed to them, the matter then presents a question for the jury to decide, *i. e.,* whether the one meaning or the other was in fact conveyed to the readers of the publication. *Odg. Lib.* *539. This contention, therefore, must also fail.

Lastly, it is contended that the declaration is demurrable because it alleges no special damage to the plaintiff. The answer to this contention is that no such averment is necessary to show a cause of action when the libelous article charges the plaintiff with the commission of a criminal offence.

The plaintiff is entitled to judgment on the demurrer.