[Civ. No. 29751.   Second Dist., Div. Five.   June 23, 1967.]

WILBUR BIGGINS, Plaintiff and Appellant, v. EVERETT L. HANSON et al., Defendants and Appellants.

Leonard L. Freedman for Plaintiff and Appellant.

Youngman, Hungate & Leopold, Richard Hungate and David E. Lindgren for Defendants and Appellants.

KAUS, P. J.—Plaintiff sued defendant General Film Laboratories Corporation (General), his former employer, for libel. The libel was uttered by Everett L. Hanson, plaintiff's immediate superior at General. Hanson was also named as a defendant. A jury trial resulted in a verdict against both defendants for $15,000 compensatory damages. The jury awarded punitive damages as follows: $2,500 against General and $500 against Hanson.

In due course a motion for a new trial was granted, but a motion for a judgment notwithstanding the verdict was denied. Plaintiff then appealed from the order granting the new trial; defendants cross-appealed. (Code Civ. Proc., § 629; Cal. Rules of Court, rule 3(a).)

The rules which govern appellate review of orders granting new trials and denying judgments notwithstanding the verdict are so well known that they need not be set forth.

The evidence in support of the trial court's order granting a new trial was as follows: Defendant Hanson, a foreman with defendant General, had personally brought plaintiff to the company in 1956. In the four years that followed he had done him several favors, such as promoting him to subforeman over the head of another employee and getting him sick pay to which he was not entitled. There were no problems between Hanson and plaintiff until plaintiff was assigned to the night shift a few months before his dismissal. Trouble developed thereafter. There was friction concerning Hanson's desire that plaintiff leave him notes showing work accomplished during the night shift and plaintiff's alleged failure to maintain certain logs properly. According to Hanson plaintiff was unavailable at times when he tried to get in touch with him during the night shift. A fellow employee testified that plaintiff frequently left the plant during that shift saying he was going to get a drink. Plaintiff reported to work with alcohol on his breath from time to time and there is some evidence that he introduced liquor into the plant.

The Memorial Day weekend in 1960 was a three day weekend. Early that year it had been planned to overhaul certain machinery during that weekend and the Fourth of July weekend which followed. Plaintiff was aware of these plans and worked over the Memorial Day weekend. Later there was a problem concerning his receiving triple pay for the overtime.

Plaintiff then failed to notify his men that they were to report for work over the July 4 weekend and no work was done. His explanation for his failure can at best be described as "cute" —it was his position at the trial that although he knew that the work had been planned, he was entitled to a reminder from Hanson which he did not get. Hanson testified that he did leave a reminder for plaintiff on his tool box. Plaintiff denied receiving it.

During the month of July Hanson made up his mind to fire plaintiff. In the evening of July 15, a Friday, Sam DeLuca, the union shop steward, told Hanson that after plaintiff learned on the first payday following the Memorial Day weekend that he would not receive triple pay, plaintiff said concerning the machinery which had been worked on: "Okay, I hope it don't work. If it does, I will fix the machines so it don't." This statement by plaintiff will be referred to as the "threat."

When Hanson learned about the threat from DeLuca on Friday he thought that plaintiff would carry it out. Over the weekend he composed the inter-office memorandum which is the basis of the action and which reads as follows: "Due to your disloyalty, insubordination and foremost, your threat to sabotage valuable laboratory equipment, your services are no longer required effective 4:00 A.M. Saturday, July 16, 1960." This memorandum was left for plaintiff who received it when he reported for work on the evening of Monday, July 18. The memorandum indicated that it was to be distributed to six different individuals. It was accompanied by a note to plaintiff offering not to "pass this communication to any one but yourself" if plaintiff resigned voluntarily.

The memorandum was subsequently published to General's personnel manager, to Hanson's superior and to Paul E. O'Bryant the business manager of plaintiff's union.

Plaintiff left the plant that night. The next morning he visited Paul E. O'Bryant at O'Bryant's office. He was angry and according to O'Bryant threatened to "sue General, the union, me, everyone."

During the ensuing conversation O'Bryant placed a telephone call to DeLuca who confirmed the story about the threat. Plaintiff then admitted to O'Bryant that he had made the threat but said: "It was one of those temper tantrums."

DeLuca personally testified that the threat had been made as reported to Hanson.

The above outline of defendants' case demonstrates

that there is nothing we can do with the order granting a new trial. There is more than adequate evidence in the record to indicate the truth of Hanson's inter-office memorandum.

■ The point on the appeal from the order granting a new trial is not, as plaintiff seems to think, whether there is sufficient evidence in support of the jury's verdict, but whether a verdict in favor of defendants would have been supported by substantial evidence. (*Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 359 [170 P.2d 465].)

We now turn to defendants' appeal. Defendants admit, as they must, that there is much contrary evidence in the record. ■ Without going into unnecessary detail, plaintiff denied—sometimes perhaps not too convincingly—the various charges of insubordination, disloyalty and, in particular, the "threat." Thus the validity of the defense of truth was strictly a jury question.

■ Defendants claim however that the libel was uttered on a conditionally privileged occasion.[1] This contention is sound (*Brewer* v. *Second Baptist Church,* 32 Cal.2d 791, 796-798 [197 P.2d 713]; Rest., Torts, §§ 593-595), but the argument that their motion for a judgment notwithstanding the verdict should have been granted depends entirely on the correctness of their further contention that there is no substantial evidence in the record that the privilege was abused.

The briefs of the parties seem to agree that the privilege is automatically abused if Hanson acted with "an ill will going beyond that which the occasion apparently justifies. . . ." (*DeMott* v. *Amalgamated Meat Cutters,* 157 Cal.App.2d 13, 27 [320 P.2d 50].) Whether this apparently unanimous opinion of the parties represents a correct view of the law is doubtful. ■ If the occasion is conditionally privileged, if the defendant's primary motive is the advancement of the interest which the privilege protects and if he speaks in good faith, the mere fact that he harbors ill will toward the plaintiff should be a neutral factor. (*Brewer* v. *Second Baptist Church, supra,* p. 797; *Noonan* v. *Rousselot,* 239 Cal.App.2d 447, 454 [48 Cal.Rptr. 817]; Rest., Torts, § 603, com. a.)[2]

[1] "A privileged publication or broadcast is one made . . . 3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." (Civ. Code, § 47, subdivision 3.)

[2] The problem is discussed in Prosser on Torts, (3d ed.) pages 821-822 as follows: "Furthermore, the qualified privilege will be lost if the defendant publishes the defamation in the wrong state of mind. The

That is not to say that ill will which goes "beyond that which the occasion apparently justifies" is not of strong evidentiary value. Surely the factual determination whether the words complained of are spoken or written for the purpose of protecting the interest protected by the privilege is aided by the ascertainment of the defamer's feelings toward the person defamed. ▆ In any event, however, all authorities are agreed that if the defendant does not believe in the truth of his charges,[3] the conditional privilege is abused. (Rest., Torts, §§ 600-601.) Having this in mind, we find that there is some substantial evidence in the record indicating that on Monday, July 18 Hanson had heard nothing about the threat.

The recital of the evidence on that point is rather tedious and we feel bound to say that it probably would not have impressed any experienced trier of facts who knows what the passage of time can do to the recollection of a witness. The question, however, is not what we would find to have been the fact, but what a jury may reasonably find. The trial judge was obviously not impressed by any part of the plaintiff's

---

word 'malice,' which has plagued the law of defamation from the beginning, has been much used in this connection, and it frequently is said that "the privilege is forfeited if the publication is 'malicious.' It is clear that this means something more than the fictitious 'legal malice' which is 'implied' as a disguise for strict liability in any case of unprivileged defamation. On the other hand, it may mean something less than spite, ill will, or a desire to do harm for its own sake; and, while there is authority to the contrary, it is the better and perhaps more generally accepted view that *the mere existence of such ill will does not necessarily defeat the privilege.* 'Malice' in this sense may subject the defendant to punitive damages if he is liable at all; but if the privilege is otherwise established by the occasion and a proper purpose, the addition of the fact that the defendant feels indignation and resentment toward the plaintiff *and enjoys defaming him will not always forfeit it.* Perhaps the statement which best fits the decided cases is that *the court will look to the primary motive or purpose by which the defendant apparently is inspired.* Discarding 'malice' as a meaningless and quite unsatisfactory term, it appears that the privilege is lost if the publication is not made primarily for the purpose of furthering the interest which is entitled to protection. If the defendant acts chiefly from motives of ill will, he will certainly be liable; and the vehemence of his language may be evidence against him in this respect. But he will likewise be liable if he publishes his statement to accomplish a distinct objective, which may be legitimate enough in itself but is not within the privilege—as for example, to retain a servant in his employment, to obtain assistance in collecting a debt, or to increase the circulation of a newspaper." (Italics added. Footnotes omitted.)

Substantially to the same effect is the discussion in 1 Harper & James, Law of Torts, section 5.27.

[3] But see the exception recognized by section 602 of the Restatement that there are occasions when one may publish defamatory rumors, as such, although one doubts their truth or even knows their falsity.

case but as he wisely said when denying defendants' motion for a judgment notwithstanding the verdict: ''The only problem here is the question of the matter of judgment notwithstanding the verdict. I suppose that somebody could use a fine strainer and find something that would favor the position of the plaintiff here.''

Using our fine strainer the following appears:

We start with the proposition that the jury could find that the threat was never made, because the plaintiff so testified.[4] The only witness to the alleged threat was DeLuca. There is in evidence a memorandum which according to DeLuca was prepared by Hanson who presented it to DeLuca for signature. The memorandum reads as follows: ''With referance [sic] to Wilbur Biggins dimissel [sic]—The following statement was made by Wilbur Biggins, to Sam De Luca, shortly after the completion of #4 dev. mach. overhaul. Quote 'I hope the machine won't work and if it does I'll do something so it won't.' Samuel C. De Luca, Staf [sic] steward.''

This memorandum is dated July 20, 1960. DeLuca testified several times that he signed it possibly within five minutes, certainly not more than an hour, after he had first told Hanson about the threat. From this the inference can be drawn that when Hanson published the libel on Monday, July 18, he had no information concerning any threat. Obviously he could not believe a story which he had not yet heard.

We realize that to arrive at these conclusions, the jury would have to do a lot of disbelieving of apparently disinterested witnesses, such as, for example, Mr. O'Bryant, who might be assumed to have been on the side of plaintiff. Nevertheless, our appellate function is, as we have said, quite limited.

There is at least one other point worth mentioning: it appears from the record that after he left General plaintiff had a problem collecting unemployment insurance. There was also a dispute with General concerning his eligibility for severance pay under General's agreement with the union. As a result of negotiations in which plaintiff was represented by O'Bryant a letter was issued by General dated August 1, 1960, which reads as follows:

''State of California,
Department of Unemployment,
234 S. Greenleaf Avenue,
Whittier, California.

---

[4]Plaintiff also denied making the admission to O'Bryant.

"Gentlemen:

"Please refer to the claim filed by Wilbur R. Biggins, social security number 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, formerly employed by General Film Laboratories.

"At the request of Local 789 of the Cinetechnicians, the management has reviewed the circumstances of this case which appears to have originated in personal incompatabilities ending in Mr. Biggins' termination.

"As a result of my inquiry, it is my feeling that the reasons for discharge reported to you represents a misunderstanding of the situation and are an exaggeration, resulting from personal involvement.

"If you feel, under the conditions as we have explained above, that Mr. Biggins should receive unemployment compensation, the General Film Laboratories management will not file protest.

Yours very truly,

ALBERT R. LANDERS

Assistant to the President''

Mr. Landers, the writer of the letter, testified that before writing it he had seen a copy of the defamatory discharge notice and that he had talked to Hanson about the "circumstances" of the case.

Although it appears rather convincingly from the record that the letter in question was the result of a compromise which had been negotiated on behalf of plaintiff by O'Bryant, it is also possible to infer that it constituted evidence of an admission by Hanson that the charges in the dismissal notice were not true. Landers did not recall too much about the occasion. He said that he discussed the matter with Hanson before he wrote the letter and "Mr. Hanson recounted the events which led up to the termination itself, and that's really about all I can tell you in detail. The explicit history, I am afraid, is not fresh in my memory."[5]

The text of the letter is hardly reconcilable with Hanson's testimony concerning plaintiff's conduct as an employee. Thus, one permissible inference from Landers' testimony is that when Hanson talked to him before he wrote the letter, he told him matters which led Landers to conclude that whatever had been reported to the Department of Unemployment was

---

[5]For what it is worth, Landers also said that after the talk with Hanson there appeared to be to him "no question that the discharge was justified in the manner in which it was handled. . . ."

"an exaggeration, resulting from personal involvement."

In his briefs plaintiff cites several other instances in the record which he claims support his contention that the conditionally privileged occasion was abused by Hanson. ■ We need not discuss the merits of these points in detail since the evidence discussed above is sufficient to convince us that the trial court was correct in denying the motion for a judgment notwithstanding the verdict.

■ The parties also discuss the matter of damages. The reason for this discussion is not too clear, but for the guidance of all concerned, particularly plaintiff, we feel that we should say this much: this is not an action for wrongful discharge or breach of an employment contract, but one for libel. The fact that plaintiff's income decreased after the libel is quite irrelevant unless he can show some causal connection.

The order granting defendants a new trial is affirmed. The order denying a judgment notwithstanding the verdict is affirmed. The appeal by defendants from the judgment is dismissed. (*Brignoli* v. *Seaboard Transp. Co.*, 29 Cal.2d 782, 792 [178 P.2d 445]; *Donahue* v. *Ziv Television Programs, Inc.*, 245 Cal.App.2d 593, 614 [54 Cal.Rptr. 130].)

Each side shall bear one half of the total costs on appeal.

Stephens, J., and Frampton, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.