**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SDV/ACCI, INC.; R. GERALD
METZ; TONIA METZ,
　　　*Plaintiffs-Appellants,*

v.

AT&T CORPORATION; MARGARET E.
ROMAN,
　　　*Defendants-Appellees.*

No. 06-15860

D.C. No.
CV-02-01529-VRW

OPINION

Appeal from the United States District Court
for the Northern District of California
Vaughn R. Walker, District Judge, Presiding

Argued and Submitted
February 12, 2008—San Francisco, California

Filed April 11, 2008

Before: William C. Canby, Jr., David R. Thompson, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Canby;
Partial Concurrence and Partial Dissent by
Judge Milan D. Smith, Jr.

## **COUNSEL**

Paul Kleven, Berkeley, California, for the plaintiffs-appellants.

Kevin M. Fong, Pillsbury, Winthrop, Shaw, Pittman, LLP, San Francisco, California, for the defendants-appellees.

## OPINION

CANBY, Circuit Judge:

Plaintiffs SDV/ACCI, Tonia Metz and Gerald Metz brought this action against AT&T and one of its employees, Margaret Roman, alleging that Ms. Roman defamed the plaintiffs in the course of her employment. The district court granted summary judgment for the defendants, ruling that the Metzes were not proper plaintiffs, and that the allegedly defamatory statements were conditionally privileged. It further ruled that SDV/ACCI, as the remaining plaintiff, could not defeat the privilege because there was no evidence that Ms. Roman made the allegedly defamatory statements with malice or without a good faith belief in their truth. The plaintiffs appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff SDV/ACCI, Inc., is a company that provides clients with consulting and staffing services. Plaintiffs Mr. and Ms. Metz are the company's CFO and CEO, respectively, and its sole shareholders. Effective February 1, 1999, defendant AT&T and SDV/ACCI entered into an agreement under which SDV/ACCI would provide temporary workers to AT&T and its subsidiaries. The agreement specified that all invoices would be payable by AT&T ten days from the date of receipt.

The parties agree that over the life of the agreement, AT&T failed to pay many of these bills on time. In her affidavit, Ms. Metz claimed that she confronted AT&T procurement spe-

cialist Margaret Roman prior to November 2000 about these payment problems. Ms. Metz claimed that, when confronted, Ms. Roman told her that before Ms. Metz withdrew SDV/ACCI's services, she should consider how powerful AT&T was and how it would appear to other clients if SDV/ACCI could not meet its service obligations to AT&T. Moreover, some complaints had arisen regarding payment of certain staff by SDV/ACCI. Although the parties dispute the extent and cause of these problems, it appears that they were due in part to an internal embezzlement that SDV/ACCI had suffered, a fact that Ms. Metz expressed to Ms. Roman. SDV/ACCI was at all times solvent.

On December 5, 2000, Mr. Metz notified Ms. Roman that he was going to terminate the agreement because of AT&T's failure to pay the invoices within 10 days, and that payroll would stop after that week. Ms. Roman protested that it was especially difficult to effect a transition to other vendors on such short notice, so Mr. Metz agreed to continue payroll until December 15. Ms. Roman complained further that it was difficult to transfer employees around the holidays, and asked if Mr. Metz was discontinuing service because of the recent embezzlement at SDV/ACCI or "because you can't afford to do business?" Mr. Metz responded, "ACCI is healthy except for the cost we've incurred from this contract, which I'm resolving today. Marge, there's nothing wrong with my business except for the time I'm having to spend on our contract." Ms. Roman then asked Mr. Metz not to say anything to the AT&T managers or employees about the transition, e-mailing a similar request on December 15, 2000 that Mr. Metz inform managers of the situation only on a "need to know" basis. Mr. Metz swore in an affidavit that he believed Ms. Roman was "very annoyed" and "felt animosity" toward him during the phone call.

After the conversation, Ms. Roman sent e-mails to several AT&T managers stating that SDV/ACCI employees would be

transferred to another vendor. The e-mails contained language similar to the following:

> SDV/ACCI are currently having financial difficulties and can no longer provide services to AT&T.

Ms. Roman and another manager also sent these e-mails to two individuals who worked for a competitor of SDV/ACCI and who were involved with the transitions.

In her deposition, Ms. Roman acknowledged that, at the time she made the statements, she did not think SDV/ACCI was unable to perform on the contract. Elsewhere, Ms. Roman asserted that, at the time she made the statements, she believed the plaintiffs' financial difficulties may have played a part in their decision. Ms. Roman also stated that she made the statements to convey a sense of urgency to the recipients.

## DISCUSSION

We review de novo the district court's grant of summary judgment. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004). In California, the definition of libel includes "a false and unprivileged publication by writing . . . which has a tendency to injure [any person] in his occupation." Cal. Civ. Code § 45. We first consider whether the Metzes as individuals were proper plaintiffs in this action. After that, we address whether the district court erred when it held that the common interest privilege foreclosed a trial on the merits.

## I

The district court held that the Metzes could not sue as individuals for defamation directed at their company because the allegedly defamatory statements could not reasonably be interpreted as referring to the plaintiffs as individuals. We

affirm on a somewhat different ground from that relied upon by the district court.

**[1]** In California, whether statements can be reasonably interpreted as referring to plaintiffs is a question of law for the court. *Alszeh v. HBO*, 67 Cal. App. 4th 1456, 1461 (1998). If there is no express reference to the plaintiff in a defamatory statement, the claim will fail unless the statement refers to the plaintiff by reasonable implication. *See Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1046 (1986) (intentional interference case citing defamation cases).

In some cases, it is relatively clear that defamatory statements about a company can reasonably be understood to refer to the owner of the company, as in *Bohan v. The Record Publ'g Co.*, 1 Cal. App. 429, 430-31 (1905), and *Schiavone Constr. Co. v. Time, Inc.*, 619 F. Supp. 684, 696-97 (D.N.J. 1985). In these cases the businesses bore the individual plaintiff's name, and in *Bohan* the defamatory statement explicitly referred to "the *proprietor* of the firm." 1 Cal. App. at 430. Neither case expressly required, however, that plaintiffs share the name of their business in order to maintain a suit. AT&T cites no California case (and we can find none) that addresses the question whether an owner of a closely-held corporation can maintain an action for a defamatory statement that refers expressly to the business alone. Cases from other jurisdictions give little aid because the results diverge greatly. *See, e.g., U.S. Steel Corp. v. Darby*, 516 F.2d 961, 964 n.4 (5th Cir. 1975) (shareholder suit disallowed, but suit as sole proprietor permitted); *A Shop Called East v. KYW-Channel 3*, 8 Med. L. Rptr. 1399, 1401-02 (D.N.J. 1982) (suit by dual owners of corporation allowed); *McBride v. Crowell-Collier Publ'g Co.*, 196 F.2d 187, 189 (5th Cir. 1952) (suit by sole shareholder disallowed). Thus we can draw no categorical conclusion whether California would or would not infer that defamation of a closely-held corporation would permit suit by its owners.

**[2]** In the absence of a fixed rule, the Metzes argue that, under the facts of their case, any defamation of their business

could reasonably be understood as referring to them. They contend that their "reputations were closely associated with the small corporation that they owned, so that any statements defaming SDV/ACCI regarding its financial problems and inability to perform would necessarily reflect on their reputations." We need not resolve this question, however, because there is an independent ground to support the district court's decision. To proceed with their suit as individuals, the Metzes must show not only that the statement could reasonably be understood as referring to them as individuals, but also that some third party understood the statement in this way. *See DeWitt v. Wright*, 57 Cal. 576, 578 (1881); *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999).

The Metzes cite *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984), for the proposition that "[i]t is sufficient if from the evidence the jury can infer that the defamatory statement applies to the plaintiff." *Id.* at 697 (quoting *DiGiorgio Fruit Corp. v. AFL-CIO*, 215 Cal. App. 2d 560 (1963)). The Metzes read *Flynn* as eliminating the need to show that a third party *actually* understood the statement to refer to the plaintiffs. We reject this contention. *Flynn* arose out of a motion to dismiss for failure to state a claim; the court held that dismissal was improper because, among other reasons, the complaint alleged that the defamatory remarks were understood by the listening public to apply to the plaintiff. *See Id.* at 697.

*Flynn* thus does not modify the rule that a defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party. *See DeWitt*, 57 Cal. at 578 ("[I]t is essential not only that it should have been written concerning the plaintiff, but also that it was *so understood* by at least some one third person."); *Restatement (Second) of Torts* § 564 cmt. a (1977) ("It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff.").

**[3]** The Metzes failed to provide admissible evidence to support this second requirement of their defamation claim. They presented some testimony in the district court that third parties communicated with them in a way that implied that the allegedly defamatory statements referred to the plaintiffs as individuals. The district court held that this evidence lacked foundation and struck it from the record. The plaintiffs do not challenge its exclusion on appeal. The plaintiffs cite no other evidence in the record suggesting that any third party understood the statements as referring to the Metzes by implication.

**[4]** For the same reason, the Metzes cannot find refuge in the well-settled doctrine that small groups of plaintiffs may sometimes recover even though they are defamed in the aggregate. *See Blatty*, 42 Cal. 3d at 1046 (collecting cases and holding that individual defamation suits may lie when groups with fewer than twenty-five members are defamed); *Kilpatrick*, 88 A. 839, 840 (N.J. Sup. 1913); *Restatement (Second) of Torts* § 564A. The alleged defamation in this case referred only to the corporation. The Metzes have not produced admissible evidence to show that the defamation was understood by any third party to apply to a group that included the Metzes. During her deposition, Ms. Roman testified that she knew of two recipients of the e-mail who had previously dealt directly with the Metzes. There was no evidence other than the Metzes' unfounded assertions to suggest that these managers, or any other recipient of the e-mails, knew about the ownership structure of SDV/ACCI and the Metzes' roles within the organization. This evidence, without more, is not sufficient to support an inference that any manager understood the e-mails to refer to the Metzes in addition to SDV/ACCI.[1]

---

[1]The Metzes place great weight in the fact that the "SDV" portion of the SDV/ACCI name stands for "Service Disabled Veteran," indicating that the company is qualified to do business as a Disabled Veteran Business Enterprise under federal and California law. The plaintiffs insist that this phrase refers "specifically" to Mr. Metz as the service disabled veteran in the enterprise, so any defamation of SDV/ACCI would necessarily defame Mr. Metz. We reject this contention. There has been no showing that the recipients of the e-mails understood the acronym "SDV" to refer to Mr. Metz.

**[5]** In holding as we do, we do not impugn the common law rule that circumstantial evidence may be used to prove that defamatory material was published to a third party who reasonably understood it to refer to the plaintiffs. *See Food Lion, Inc. v. Melton*, 458 S.E.2d 580, 585 (Va. 1995) (collecting cases from seven other states). It is not always necessary for a plaintiff to present "testimony from a third party regarding what that person heard and understood." *Id.* We simply apply the rule that when a defamatory statement identifies the plaintiff only by implication, and the implication is reasonable but by no means necessary, the plaintiff carries a corresponding burden to present evidence that a recipient of the statement made the implied connection. *See Davis v. Hearst*, 116 P. 530, 548 (Cal. 1911) ("[W]here the libel is covertly expressed or ambiguous worded, evidence is required to show that the plaintiff is the party to whom it applies, or was intended to apply. But . . . if the jury find that any person to whom it was published would understand it as applying to the plaintiff, that will be sufficient to sustain the verdict." (quoting Henry Folkard, *Slander & Libel* at 276 (7th ed. 1908))), *overruled on other grounds by Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863 (1989); Dan B. Dobbs, *The Law of Torts* § 405 (2000) ("[E]xtrinsic facts, if known to at least one recipient of [a publication not internally identifying the plaintiff], may demonstrate that it referred to the plaintiff.").

**[6]** Because there was no evidence that the e-mails were actually understood by any recipient to refer to the plaintiffs, we need not address whether any such understanding was reasonable under *Bohan* and *Blatty*. Therefore, we hold that the Metzes have not presented sufficient evidence to proceed with their claim as dual proprietors of SDV/ACCI.

## II

**[7]** AT&T next contends that even if the e-mails were defamatory with respect to SDV/ACCI, the contents of the e-mails were privileged and therefore not actionable. California

Civil Code Section 47(c) specifies that privilege protects a statement made

> [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information. . . ."

"The applicability of the [Section 47(c)] privilege provision is a question of law where . . . the facts alleged to give rise to the privilege are undisputed." *Vackar v. Package Machinery Co.*, 841 F. Supp. 310, 313 (N.D. Cal. 1993). For reasons we set forth below, we hold that this common interest privilege is potentially applicable to Ms. Roman's e-mails, but that issues of fact remain that render summary judgment inappropriate.

## A.   The Occasion for the Communication

**[8]** "The defendant has the initial burden of showing the allegedly defamatory statement was made on a privileged occasion . . . ." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 915 (2002). We conclude that the defendants have carried this initial burden. Ms. Roman communicated the allegedly libelous statements to employees of AT&T and others involved with transferring the employees to a new vendor. She shared a business and organizational relationship with the recipients. Therefore, the privilege extends to these relationships.

The plaintiffs argue, however, that Ms. Roman's communications exceeded the scope of the privilege. The privilege "may be lost if the defendant abuses the privilege by excessive publication or the inclusion of immaterial matter which have no bearing upon the interest sought to be protected . . . ." *Gardner v. Shasta County*, No. 2:06-CV-0106, 2007 WL

3243847, at *5 (E.D. Cal. Nov. 1, 2007) (quoting *Deaile v. Gen. Tel. Co.*, 40 Cal. App. 3d 841, 847 (1974)). "[T]o be protected, the communication must be one reasonably calculated to further [the common] interest." *Cuenca v. Safeway S.F. Employees Fed. Credit Union*, 180 Cal. App. 3d 985, 995 (1986) (citation and internal quotation marks omitted).

**[9]** The plaintiffs argue that Ms. Roman's communications fell outside the scope of the privilege because the recipients "had no legitimate common interest in SDV/ACCI's 'financial difficulties.' " Perhaps this is so insofar as the "financial difficulties" phrase was not strictly necessary to the message that Ms. Roman needed to convey, namely, that employees needed to be transferred to a new vendor. The plaintiffs' approach, however, places too drastic a restraint on the scope of the common interest privilege, a scope that is "not capable of precise or categorical definition." *Kashian*, 98 Cal. App. 4th at 914. The standard is one of reasonableness, not of necessity. *See Cuenca*, 180 Cal. App. 3d at 995. Even putting aside Ms. Roman's asserted desire to convey a sense of urgency, which is in dispute, the "financial difficulties" phrase still has relevance to the underlying communication. Conceivably, it provides the recipients with an understanding of why they have been assigned a difficult task. It puts to rest any urge to blame Ms. Roman or AT&T for the unwelcome news. It also undermines any hope of challenging the order; these "financial difficulties" make the managers' task imminent and unavoidable. Therefore, the common interest privilege is applicable on its face to the "financial difficulties" language.

## B.   Ms. Roman's State of Mind

**[10]** Even if the communication furthers a common interest of the parties to the communication, a plaintiff may still defeat the privilege. Section 47(c) specifies that the privilege does not protect statements made with malice. In addition, California courts have held that "ordinarily the privilege is

lost if defendant has no reasonable grounds for believing his statements to be true." *Inst. of Athletic Motivation v. Univ. of Ill.*, 114 Cal. App. 3d 1, 12 (1980). We hold that, contrary to the view of the district court, triable issues exist as to malice and good faith, so summary judgment on this issue was improper.

### 1.   Malice

**[11]** "Malice" as used in section 47(c) includes the following subjectively oriented definition:

> "Malice" . . . means a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person. Thus the privilege is lost if the publication is motivated by hatred or ill will toward plaintiff, or by any cause other than the desire to protect the interest for the protection of which the privilege is given.

*Cabanas v. Gloobt Assocs.*, 942 F. Supp. 1295, 1301 n.7 (E.D. Cal. 1996) (citations and internal quotation marks omitted). Malice may not be inferred from the publication itself. Cal. Civ. Code § 48. The plaintiff bears the burden of proving malice. *Lundquist v. Reusser*, 7 Cal. 4th 1193, 1211 (1994).

A showing that malice merely exists is not sufficient to defeat the privilege. "If the occasion is conditionally privileged, if the defendant's primary motive is the advancement of the interest which the privilege protects and if he speaks in good faith, the mere fact that he harbors ill will toward the plaintiff should be a neutral factor." *Biggins v. Hanson*, 252 Cal. App. 2d 16, 20 (1967).

The district court based its conclusion that the plaintiffs could not show malice solely on a bit of deposition testimony where Mr. Metz admitted a belief that Ms. Roman did not "hate" him and his wife at the time Ms. Roman sent the e-

mails. This admission, however, is but one piece of evidence and it will not bear the conclusive effect that the district court accorded it on the issue of malice. *See* Fed. R. Civ. P. 36 advisory committee's note (contrasting the binding effect of a Rule 36 admission with the effect of an evidentiary admission of a party); *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 757 (2d Cir. 2004) (Rule 801 admission of opinion is not binding admission under Rule 36); *Punzak v. Allstate Ins. Co.*, No. 07-1052, 2007 WL 1166087, at \*5 (E.D. Pa. Apr. 16, 2007).

Regardless of its truth, Mr. Metz's statement does not dispose of the question at issue. *Cabanas* defines malice to include hatred *or* ill-will, specifying that the privilege is also lost if the communication is motivated "by any cause other than the desire to protect the interest for the protection of which the privilege is given." *Cabanas*, 942 F. Supp. at 1301 n.7. Whether or not Ms. Roman hated plaintiffs at the time the e-mails were sent is not the same question as whether Ms. Roman was primarily motivated by ill will, spite, or some other improper motive, in sending the e-mails. Mr. Metz recognized this distinction in his testimony when he stated that Ms. Roman felt "animosity" though she did not hate him.

**[12]** Moving beyond the district court's reasoning, we hold that the plaintiffs presented enough evidence of malice to survive summary judgment. Ms. Metz stated in her affidavit that when confronted regarding AT&T's performance under the contract, Ms. Roman made menacing comments to the plaintiffs about the dangers of withdrawing services from such a big company. Ms. Roman made the allegedly defamatory statements shortly after the plaintiffs had renounced the contract. In addition, Mr. Metz formed an impression that Ms. Roman became angry when he withdrew his services, an impression supported by the arguably mocking question Ms. Roman asked about his ability to do business. These circumstances permit an inference that she included the alleged defamation in her e-mail to make good on her prior threat. The

implication of Ms. Roman's statement—that plaintiffs were to blame for the situation—might be viewed by a trier of fact as disingenuous in light of the repeated failure of AT&T to pay SDV/ACCI's bills on time. The fact that Ms. Roman instructed Mr. Metz not to communicate with the managers might also contribute to a finding by a reasonable trier of fact that Ms. Roman had a motive to deceive beyond the common purpose protected by the privilege. Mr. Metz stated in a deposition that he did not believe Ms. Roman harbored animosity toward him prior to December 5. However, the issue in this case is Ms. Roman's state of mind at the time she sent the e-mails, not her state of mind prior to December 5. Making all inferences in the light favorable to the plaintiffs, we conclude that there is enough circumstantial evidence to permit a reasonable trier of fact to find that malice primarily motivated the publication regarding SDV/ACCI's financial difficulties and ability to perform under the agreement.

## 2. *A Good Faith Belief in the Truth of the Statement*

[13] Finally, a plaintiff can defeat the privilege by showing that the defendant "ha[d] no reasonable grounds for believing [the] statements to be true." *Inst. of Athletic Motivation*, 114 Cal. App. 3d at 12. Prior to sending the e-mails, Ms. Roman was told by Ms. Metz that the plaintiffs had suffered some setbacks stemming from an instance of embezzlement. Mr. Metz also told Ms. Roman, before she sent the e-mails, that the plaintiffs were not in financial distress, and that the only problem of their business was the cost of, and time taken by, the AT&T contract. Nothing in the record suggests that Ms. Roman had firsthand knowledge of the plaintiffs' financial position, except to the extent AT&T was failing to make timely payments. During her deposition, Ms. Roman admitted that at the time she sent the e-mails, she understood that the plaintiffs "were able to [provide services], but they chose not to." At another point, Ms. Roman testified that Mr. Metz had told her "he couldn't do it [provide services] any more." These factors, particularly when viewed alongside the evi-

dence of malice, raise a triable issue as to her good faith belief in the truth of her statement, an issue that a trier of fact must decide. Therefore, we reverse the grant of summary judgment on the issue of good faith.

## CONCLUSION

Because the Metzes presented no evidence that any recipient of Ms. Roman's e-mails understood the e-mails to refer to the Metzes as distinct from their corporation, we hold they cannot proceed in their claim as individuals. Therefore, summary judgment was appropriate as to them. SDV/ACCI may nonetheless proceed with its action. Although the common interest privilege potentially applies, it does not bar the action as a matter of law because genuine issues of fact remain as to whether malice was Ms. Roman's primary reason to include the alleged defamation in her e-mails and whether Ms. Roman lacked a good faith belief in the truth of her statement. We therefore reverse the summary judgment against SDV/ACCI and remand for further proceedings consistent with this opinion.

The plaintiffs are entitled to two-thirds of their costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

MILAN D. SMITH, JR., Circuit Judge, concurring in part, and dissenting in part:

I concur in Part I of the majority opinion, affirming summary judgment as to the Metzes' individual claims because they have failed to present evidence that any recipient of the emails actually understood them to refer to plaintiffs. I respectfully dissent, however, as to Part II.B because I would

further hold that the Metzes have also failed to present evidence of malice or bad faith sufficient to vitiate the common interest privilege, and I would affirm the district court's grant of AT&T's motion for summary judgement.

### 1.  *Malice*

I agree that the district court erred to the extent it concluded that Mr. Metz's statement that Ms. Roman did not "hate" him and his wife was a binding admission that estopped the Metzes from contending that Ms. Roman's email was motivated by malice. That remark, given in a deposition and immediately qualified,[1] does not constitute a judicial admission that would bar presentation of evidence that Ms. Roman was motivated by malice, whether mere "animosity" or outright hatred. Removing that bar, however, does not relieve the plaintiffs of the burden of proving not only that malice was present when Ms. Roman wrote the email, but also that malice was the *primary* motive for the communications. "[I]f the publication is made for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the privilege." *Williams v. Taylor*, 129 Cal. App. 3d 745, 752-53 (1982) (quoting Restatement (Second) of Torts § 603, cmt. a (1977)); *Biggins v. Hanson*, 252 Cal. App.2d 16, 20.

Mr. Metz's assertion, made in his deposition, that Ms. Roman felt "animosity" toward him not rising to the level of hatred cannot constitute "evidence" of malice. Mr. Metz speculated that "there was some anger, you know, some hostility" because his actions required Ms. Roman to work over the holidays, but admitted that "[t]hats just me. That's just what I think." When pressed as to why he thought that, Mr. Metz

---

[1]Mr. Metz clarified a few seconds thereafter, "She definitely didn't like working vacation—during the Christmas, but I don't think—hate's a pretty big word."

was clear that his belief was based solely on the fact that Ms. Roman had written a false statement in her email: "It's not a good statement to say. So what drove it? The only thing I can think that drove it is negative feelings, you know." Cal. Civ. Code § 48 is clear, however, that malice cannot be inferred from the fact of the communication itself.

Apart from Mr. Metz's assertions of "anger" and "animosity," the only other concrete evidence the plaintiffs have proffered is Ms. Metz's report of a threat by Ms. Roman, some unspecified time earlier, that the Metzes "needed to consider that AT&T was very powerful before withdrawing any services, because it would not look good if other clients thought we would not service AT&T properly, and she would spread the information widely." The services were withdrawn, and shortly thereafter, Ms. Roman sent her emails. While relevant to an inquiry into malice, such a remark, without more, does not perceptibly advance plaintiffs' cause. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). No reasonable jury, even if it believed that the threat was actually uttered, could infer from the threat alone that malice, rather than the privileged purpose, was the primary motivation for Ms. Roman's email.

## 2. *Good Faith Basis*

The majority also errs in stating that plaintiffs have provided sufficient evidence to meet their burden that the defendant had no reasonable ground for believing her statements to be true. At the time the subject emails were sent, Ms. Metz had personally told Ms. Roman by email that SDV/ACCI had suffered a large-scale theft by employees who had disrupted SDV/ACCI's accounting system in an effort to cover their tracks. She also knew that several AT&T managers had complained about late and improperly calculated paychecks. She

knew from an email sent by Shirley Delia, a co-worker who had spoken with Mr. Metz, that SDV/ACCI had suffered significant financial problems caused by Mr. Metz's medical disabilities. Finally, she knew that Mr. Metz was calling to abruptly cancel the SDV/ACCI contract because of late payments, and would not even grant an extension so the transition could occur after the holidays. Mr. Metz's assurance to Ms. Roman during that same conversation that SDV/ACCI was not in financial trouble is insufficient to negate a good faith belief Ms. Roman might have had about plaintiffs' financial position: Common sense suggests that what Mr. Metz said is exactly the type of comment the owner of a company on the verge of insolvency *would* make.

The only evidence on this issue in plaintiffs' favor is Ms. Roman's contradictory remarks in testimony: at one point in the deposition, she commented that "[a]t that point they were able to [provide services], but they chose not to"; at another, she says that "[H]e couldn't do it anymore." This apparent contradiction, however, does nothing to undermine the *other* evidence of SDV/ACCI's financial instability Roman had at the time—the "multitude of factors" she cited in testimony as the basis for her belief that SDV/ACCI was in financial difficulty. In other words, plaintiffs' case rests upon a mere scintilla, which I would hold is insufficient to defeat the privileged occasion and avoid summary judgment.

Because I do not believe that a reasonable jury, presented with the two modica of evidence that plaintiffs have put forward to defeat the privileged occasion, could find either the presence of malice or the absence of reasonable grounds to believe the truth of the emails' content, I respectfully dissent from the majority opinion, and would affirm the district court's grant of summary judgement for AT&T.