NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ONOME ONOKOHWOMO, an individual, | No. 21-55311 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-00261-CJC-SK |
| v. | |
| STERLING JEWELERS, INC., DBA Kay Jewelers, a Delaware corporation; ARNULFO DIAZ; DOES, 2 through 20, inclusive, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted March 7, 2022
Pasadena, California

Before: BERZON and FRIEDLAND, Circuit Judges, and KORMAN,** District Judge.

Partial Concurrence and Partial Dissent by Judge KORMAN.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

Onome Onokohwomo appeals the district court's grant of summary judgment in favor of Defendants on his claims of racial discrimination under the California Unruh Act, defamation, and intentional infliction of emotional distress. We affirm in part, reverse in part, and remand for further proceedings.

1. We affirm the dismissal of Onokohwomo's claim that he was denied access to the interior of the Kay Jewelers store in violation of the Unruh Act. Onokohwomo provided no evidence that other customers were served inside the store. Defendants provided evidence that, given the store's layout, customers are ordinarily served outside the store. Onokohwomo has not established a genuine dispute of material fact concerning whether he was excluded from the store for discriminatory reasons.

2. We reverse the district court's grant of summary judgment with respect to Onokohwomo's claim that he was denied the chance to try on diamond chain necklaces in violation of the Unruh Act.

i. The evidence related to whether the store carried diamond chain necklaces is limited to verbal assertions. Onokohwomo stated, more than once, that he observed diamond chain necklaces in the store's display cases; two store employees stated that the store did not carry such necklaces. The district court erred in granting summary judgment to Defendants on the ground that the store did not carry diamond chain necklaces, as so ruling necessarily entailed a credibility

2

assessment inappropriate on summary judgment. *See, e.g.*, *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021).

ii. Onokohwomo has created a genuine dispute over whether he was denied the chance to try on diamond chain necklaces on account of his race. The record contains evidence that Diaz, a store employee: (1) refused to show Onokohwomo the diamond chain necklaces Onokohwomo saw in the display cases; (2) falsely claimed that Onokohwomo met up with another Black man at the escalators after the alleged theft; (3) falsely described Onokohwomo as 6'1 or 6'2 even though Onokohwomo is actually 5'7, three inches shorter than Diaz; and (4) used stereotypically Black vernacular during their interactions, as if Diaz were "trying to act black" or "talk like a hip-hop guy." In light of this evidence, a jury could reasonably infer that Diaz's refusal to show Onokohwomo the chains was racially motivated. *See, e.g.*, *Lindsey v. SLT L.A., LLC*, 447 F.3d 1138, 1153 (9th Cir. 2006).

3. We affirm the dismissal of Onokohwomo's defamation claims regarding statements made to: (1) the friends and family members of Kay Jewelers' store employees, (2) Kay Jewelers' internal risk management team, and (3) a group of affiliated jewelry stores in Southern California.

In California, a defamatory statement that does not refer to the plaintiff by name sufficiently identifies the plaintiff if it is capable of being understood as

3

referring to the plaintiff and there is evidence, direct or circumstantial, that the statement was "so understood by a third party." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959–60 (2008); *Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1162–63 (2019). Contrary to Onokohwomo's assertion, this test applies even if the ambiguous statement refers to only one person, as opposed to a group or class of persons. *See, e.g., De Witt v. Wright*, 57 Cal. 576, 577–78 (1881).

Here, none of the three categories of statements outlined above referred to Onokohwomo by name. The statements made to the friends and family members of store employees did not provide a physical description of Onokohwomo, or any other information that might have reasonably identified him. So Onokohwomo has not adduced sufficient evidence to infer that the friends and family members of store employee identified him as the subject of the statements.

The statements made to Kay Jewelers' internal risk management team and the group of affiliated stores did provide a brief description of Onokohwomo. And Onokohwomo has achieved some level of celebrity as an Afrobeats musical artist. But, on the undisputed record, the store employees involved in the incident and the police officers who arrived at the scene and arrested Onokohwomo did not know of that celebrity. Onokohwomo provided no evidence that the internal risk management team and the employees of the group of affiliated stores knew of his

celebrity status or otherwise would have been able to identify him based on his physical description alone.

Onokohwomo contends that because Defendants' statements included details regarding the date and location of the alleged theft, his identity could have been ascertained if the recipients had looked up the police report. We need not decide whether, under California law, the availability of extrinsic information that post-dates an allegedly defamatory statement can transform an ambiguous statement into one that identifies the plaintiff. Even if it can, Onokohwomo has not adduced sufficient direct or circumstantial evidence to suggest that the recipients of Defendants' statements took steps to ascertain his identity, by consulting the police report or otherwise.

4. We reverse the dismissal of Onokohwomo's defamation claim regarding statements made to an employee of Kevin Jewelers, an unaffiliated jewelry store in the Montebello Town Center Mall.

The record establishes that Fern, a Kay Jewelers store manager, spoke to an employee of Kevin Jewelers about the incident the day after the alleged theft, and the Kevin Jewelers employee told Fern "that the plaintiff did go to her store also." The record also contains an internal Kevin Jewelers email. The email describes a young, mid-20s Black man with a thin build who was accompanied by a young girl and a baby. It explains that the man visited Kevin Jewelers twice on the day of the

5

alleged theft and includes details about the alleged theft that could not have been directly perceived by a Kevin Jewelers employee, such as a description of the merchandise allegedly stolen as well as details about how and when the alleged theft occurred. Although the email incorrectly uses female pronouns to describe the Kay Jewelers associate who served Onokohwomo, it accurately summarizes Onokohwomo's appearance and movements on the day of the alleged theft.[1]

There is no direct evidence as to what Fern said to the Kevin Jewelers employee during their conversation, but a plaintiff bringing a defamation claim need not specify the precise words a defendant used. *Okun v. Superior Court*, 29 Cal. 3d 442, 458 (1981). Drawing all reasonable inferences in Onokohwomo's favor, as we must at the summary judgment stage of review, *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1033 (9th Cir. 2020), we conclude the record contains sufficient evidence for a jury to infer that Fern described the alleged theft to the Kevin Jewelers employee, and that the employee had sufficient extrinsic information about Onokohwomo to determine that the alleged thief and the person who had been seen twice at Kevin Jewelers were the same individual.

---

[1] Our dissenting colleague characterizes the Kevin Jewelers email as containing information that "would have been common knowledge at the mall, if not elsewhere." Dissent at 5. There is no basis in the record to conclude that the specific details included in the email—such as a description of the merchandise allegedly stolen and how the alleged theft occurred—were common knowledge, at the mall or elsewhere.

These inferences, if made, could suffice to make out a claim that Fern defamed Onokohwomo. *Peterson v. Rasmussen*, 47 Cal. App. 694, 698 (1920).

5. We affirm the dismissal of Onokohwomo's defamation claim regarding statements made to mall security at the Montebello Town Center Mall.

The district court dismissed this claim on the ground that the statements to mall security were privileged under California Civil Code section 47(b). The section 47(b) privilege is aimed at communications made to government officials and does not cover statements made to private parties unless: (1) the statements were directed at preparing for, assisting, or eliciting government action, and (2) the statements bear a "necessary or useful" relationship to the government action, above and beyond merely being "related in some way" to the government action. *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 785–86 (2017); *Hagberg v. Cal. Fed. Bank*, 32 Cal. 4th 350, 360, 362 (2004); *Chabak v. Monroy*, 154 Cal. App. 4th 1502, 1506–08 (2007). The focus of this inquiry is on the "*aim* of the communication" at the time it was made. *Hagberg*, 32 Cal. 4th at 368. The burden falls on the defendant to prove that an allegedly defamatory statement "was made on a privileged occasion." *Taus v. Loftus*, 40 Cal. 4th 683, 720–21 (2007).

The evidence concerning Defendants' motivation for contacting mall security came from store manager Jennifer Ropke, who coordinated the store's outreach to both law enforcement authorities and mall security. Ropke indicated

7

that, although store policy requires employees to contact law enforcement authorities directly, mall security is contacted too so that mall security can "see if they can find them. If they – let's say someone ran, [mall security] can go and find them, run after them, I guess." So there is evidence that mall security is contacted to locate and detain the suspect. California Penal Code section 490.5(f)(1) authorizes a merchant to "detain a person for a reasonable time" and "in a reasonable manner" when the merchant "has probable cause to believe the person to be detained is attempting to unlawfully take . . . merchandise from the merchant's premises." The provision covers the actions of private security. *See, e.g.*, *Johnson v. Ralphs Grocery Co.*, 204 Cal. App. 4th 1097, 1108 (2012).

Ropke's testimony is therefore sufficient to establish that Defendants' statements to mall security were made for the purpose of assisting law enforcement authorities in investigating an alleged theft by finding and detaining the suspect, who would then be turned over to the police, and the statements were meant to play a "necessary or useful" role in that investigation. Defendants have thus met their burden to prove that the statements to mall security are privileged under section 47(b).

Section 47(b) was recently amended to provide that false reports of criminal activity are not absolutely privileged. No part of the California Code "is retroactive, unless expressly so declared." Cal. Civil Code § 3; *see also*

*Evangelatos v. Superior Court*, 44 Cal.3d 1188, 1208 (1988).  Here, the amended statutory language does not evidence an intent that the amendment apply retroactively.  The revisions to section 47(b) therefore do not undermine our conclusion that, in this case, Defendants' statements to mall security were privileged.

6.  The self-publication doctrine cannot revive Onokohwomo's four dismissed defamation claims.  In California, the "originator of [a] defamatory statement [is] liable for damages caused by the disclosure of the contents of the defamatory statement by the person defamed where such disclosure is the natural and probable consequence of the originator's actions."  *McKinney v. County of Santa Clara*, 110 Cal. App. 3d 787, 796 (1980).  Here, any pressure Onokohwomo faced to respond to the theft accusations stemmed from the absolutely privileged statements Defendants made to law enforcement authorities.  Holding Defendants liable for Onokohwomo's self-publication of the defamatory statements, foreseeable only in light of the downstream effects of Defendants' privileged communications to the police, would undermine the purpose of the section 47(b) privilege, which is to promote open communication between law enforcement authorities and potential witnesses to crime.  *See Hagberg*, 32 Cal. 4th at 360; *Flatley v. Mauro*, 39 Cal. 4th 299, 325 (2006); *cf. Tilkey v. Allstate Ins. Co.*, 56 Cal. App. 5th 521, 542–43 (2020).

7.  We affirm the dismissal of Onokohwomo's intentional infliction of emotional distress claim.  Onokohwomo cannot recover for the emotional distress he suffered as a consequence of Defendants' privileged communications to law enforcement authorities.  The evidence indicates that the lion's share of Onokohwomo's distress stems from those privileged communications.  He has not created a genuine dispute that the emotional distress he suffered from the racially motivated denial of services, on its own, qualifies as "severe or extreme." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009).

8.  In light of the foregoing analysis, we vacate the district court's award of costs to Defendants.  Each party shall bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

FILED

JUN 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Onome Onokohwomo v. Sterling Jewelers, Inc., et al.*, 21-55311

KORMAN, District Judge, concurring in part and dissenting in part:

I concur in the memorandum disposition to the extent it affirms the order of the district court granting the defendants' motion for summary judgment. I dissent from the holding of the majority vacating the grant of summary judgment on one Unruh Act claim and one defamation claim because, in the majority's view, the record created triable issues regarding whether the plaintiff (1) "was denied the chance to try on diamond chain necklaces [on account of his race] in violation of the Unruh Act," and (2) was defamed when one of Kay Jewelers' employees related the allegedly false claim that the plaintiff stole a gold necklace to an employee at Kevin Jewelers.

**1.** The evidence from which the majority draws the inference of racial discrimination is "that Diaz, a store employee: (1) refused to show Onokohwomo the diamond chain necklaces Onokohwomo saw in the display cases; (2) falsely claimed that Onokohwomo met up with another Black man at the escalators after the alleged theft; (3) falsely described Onokohwomo as 6'1 or 6'2 even though Onokohwomo is actually 5'7, three inches shorter than Diaz; and (4) used stereotypically Black vernacular during their interactions, as if Diaz were 'trying to act black' or 'talk like a hip-hop guy.'" "In light of this evidence," the majority

1

holds that "a jury could reasonably infer that Diaz's refusal to show Onokohwomo the chains was racially motivated."

I do not understand, nor does the majority explain, how the inference of discrimination follows from the fact that Diaz falsely claimed that Onokohwomo met up with another black man after the alleged theft or that Diaz falsely described Onokohwomo's height. Significantly, in his deposition questioning of Diaz, Onokohwomo's counsel did not suggest that these alleged false statements supported an inference of racial animus with respect to Diaz's denial of service. Rather, Onokohwomo's counsel implied that these statements were made to provide support for Diaz's claim that Onokohwomo stole the gold necklace when in fact Diaz had done so. Onokohwomo's counsel posed the following question after asking Diaz whether he stole the chain: "Isn't it true that you saw a black man with dreadlocks who you thought was a six foot one or two, scary, big black guy, this was your opportunity to steal from the store and pin it on somebody else?" Diaz responded that he did not remember.

Nor does the evidence that Diaz used "stereotypically Black vernacular" during their interaction create a genuine dispute that Diaz engaged in a racially motivated denial of service. Onokohwomo himself testified at his deposition that Diaz "was trying to be a good customer service guy and sell me something I didn't want," specifically, a gold necklace on which Kay Jewelers could put diamonds

2

because (according to Diaz) Kay Jewelers did not carry men's diamond necklaces. Indeed, Onokohwomo understood that "[Diaz] tried to make me feel comfortable by talk[ing] like a hip-hop guy." Onokohwomo testified that Diaz "used words, like 'Yo, I got you homie. I know what you want. I know what you want.'" While Onokohwomo subsequently described those efforts as "more for mockery than make comfortable type of situation," he continued to acknowledge that Diaz was "trying to get [me] to buy something," albeit "in the wrong way."

Moreover, Diaz not only showed Onokohwomo a $6,999 "10k Yellow Gold 10mm Miami Cuban Link chain," but placed it around Onokohwomo's neck, asked if he liked it, and invited him to see how he looked in the mirror. Thus, even if the manner in which Diaz allegedly addressed Onokohwomo may have been inappropriate, when viewed in light of the complete record, that fact simply does not support the claim that Diaz's refusal to show Onokohwomo diamond chains instead of a gold chain on which Kay Jewelers offered to inset diamonds was a racially motivated denial of service.

If anything, the fact that Diaz was trying to persuade Onokohwomo to purchase such a gold chain supports Diaz's claim that he did not show Onokohwomo a diamond chain because Kay Jewelers did not carry any men's diamond necklaces. Indeed, although Onokohwomo claimed to have seen diamond

3

necklaces, his deposition testimony suggests that he had seen only women's diamond necklaces and loose diamonds.

2. I am also unable to concur in the reversal of summary judgment on Onokohwomo's defamation claim based on the majority's conclusion that "the record contains sufficient evidence for a jury to infer that [a manager at Kay Jewelers named] Fern described the alleged theft to the Kevin Jewelers employee, and that the employee had sufficient extrinsic information about Onokohwomo to determine that the alleged thief and the person who had been seen twice at Kevin Jewelers were the same individual." The memorandum disposition relies on record evidence that "Fern, a Kay Jewelers store manager, spoke to an employee of Kevin Jewelers about the incident the day after the alleged theft, and the Kevin Jewelers employee told Fern 'that the plaintiff did go to her store also.'"

When viewed in context, this statement does not provide a basis for concluding that Fern was the source of any information that allowed the Kevin Jewelers employee to infer that the alleged thief was the individual who had twice been seen at Kevin Jewelers that day. Indeed, the email that the memorandum disposition refers to was written by an employee of Kevin Jewelers the day after the incident at issue. Significantly, it begins by describing events that occurred at Kevin Jewelers before Onokohwomo went to Kay Jewelers and described Onokohwomo's conduct at Kevin Jewelers (without naming him) which led Kevin

4

Jewelers to become suspicious that Onokohwomo would steal a Rolex. In the pertinent part, the email states that five minutes after Onokohwomo subsequently returned and then walked out of Kevin Jewelers, "we see police and security get him and handcuff him and took him." The email then speculated that "*apparently*" prior to returning to Kevin Jewelers, Onokohwomo went to Kay Jewelers and asked to see a chain. The email then goes on to describe what at that point would have been common knowledge at the mall, if not elsewhere: the incident at Kay Jewelers. By the time the email was sent, the writer had witnessed Onokohwomo being arrested, Kay Jewelers had notified mall security and loss prevention of the alleged theft with a description of Onokohwomo, and Onokohwomo had published a video on Instagram (within a few hours of the incident) in which he clearly suggested that he was framed of theft. Moreover, Onokohwomo testified that many people had taken pictures and videos of the incident on their cell phones.

Notably, the email does not identify anyone at Kay Jewelers as the source of the information. The memorandum disposition addresses this gap by observing that "a plaintiff bringing a defamation claim need not specify the precise words a defendant used." But the issue is not the precise words that were used, but whether any defamatory statement was made.

I add these brief words in conclusion. I would have been prepared to agree that there was a triable issue as to whether Diaz stole the gold necklace and falsely

accused Onokohwomo of doing so. Nevertheless, the complaint did not allege a cause of action for causing Onokohwomo to be falsely arrested, presumably because such a cause of action was not then available under California law. *See Hagberg v. Cal. Fed. Bank*, 81 P.3d 244, 248–50 (Cal. 2004), *superseded by amendment to* California Civil Code § 47(b), *effective Jan. 1, 2021*. Instead, Onokohwomo alleged a collection of meritless defamation and emotional tort claims accompanied by an implausible claim that Diaz declined to show him a diamond necklace because of his race even though Onokohwomo conceded that Diaz was actually trying to sell him other expensive, if not more expensive, jewelry. I respectfully dissent from the majority's decision to allow Onokohwomo to proceed to trial on one of those meritless defamation claims and the implausible Unruh Act discrimination claim.