Present:  All the Justices

FOOD LION, INC.

v.  Record No. 941224

CHRISTINE F. MELTON

OPINION BY JUSTICE BARBARA MILANO KEENAN
June 9, 1995

CHRISTINE F. MELTON

v.  Record No. 941230

FOOD LION, INC.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
George F. Tidey, Judge

In this appeal from a judgment in a tort action, we consider whether the trial court erred:  1) in striking the plaintiff's evidence of defamation; and 2) in barring the plaintiff from introducing in her case in chief the defendant's original responses to the plaintiff's request for admissions, which had been amended prior to trial.

Christine F. Melton filed a motion for judgment against Food Lion, Inc., alleging intentional infliction of emotional distress, defamation, insulting words, false imprisonment, and negligence.  Melton alleged that, upon leaving the Food Lion store located at Route 1 and Parham Road in Henrico County, she was "accosted by a security guard" employed by Food Lion, who accused her "repeatedly and in a belligerent accusatory voice" of leaving the store with meat in her purse.  Melton alleged that, as a result of this encounter, she suffered "great humiliation, embarrassment, pain, suffering, anxiety, stress, severe distress, nervousness and damage to her reputation," which caused her to

require medical attention.

In response to Melton's requests for admission, Food Lion made the following relevant admissions:

3.   Admit that during his encounter with the plaintiff on April 19, 1991, the security guard referred to in the plaintiff's Motion for Judgment was employed by the defendant.

Response:  Food Lion admits that the loss prevention agent referred to in the motion for judgment was employed by Food Lion.

. . .

5.   Admit that at the time of the plaintiff's encounter with the security guard referred to in the plaintiff's motion for judgment, the security guard was acting within the scope of his employment with the defendant.

Response:  Food Lion admits that during all times relevant to this action, the loss prevention agent was acting within the scope of his employment with Food Lion.

Shortly before trial, Food Lion moved to amend these responses to deny that Melton's accuser was a Food Lion employee acting within the scope of his employment.  At a hearing, Food Lion proffered testimony that its manager and loss prevention agent had made these admissions based on their belief that Melton's lawsuit arose out of an incident they recalled, but they later realized that Melton was not the woman involved in that other incident.

The trial court permitted Food Lion to file amended responses.  At the trial, the court granted Food Lion's motion in limine prohibiting Melton from introducing the original

admissions into evidence as part of her case, but ruled that she could use them for impeachment purposes.

Melton, who was 68 years old at the time of the incident, testified that on the day in question, after purchasing meat at the Food Lion store, she left the store and walked out into the parking lot. She had almost reached her car, which was parked "directly in front of the store in the regular parking lot," when a man approached her and accused her of leaving the store with meat belonging to Food Lion in her purse.

According to Melton, the man said, "[D]on't you have some meat that belongs to us?" Melton told the man she had purchased some meat and had a receipt to prove this fact. The man then said, "I'm not talking about that, I'm talking about the meat that you have in your purse." Although Melton denied having any meat in her purse, the man repeatedly questioned her in an accusatory manner, using a "very loud tone," and stood close to her so that she understood she was not free to leave. He then showed her an object that appeared to be a badge and stated, "What if I called the police?" After Melton allowed him to search her purse and no merchandise was found, the man terminated the encounter and left.

Melton further testified that the incident occurred on a Friday afternoon, that people were nearby during this confrontation, and that there were "people going in and out of the store and there were people stopping to listen and see what

was going on." Melton did not know the names of any of these people. She also stated that the entire incident lasted about ten minutes.

Melton stated that, after arriving home, she telephoned the store and asked to speak to the manager. Her call was transferred and was answered by an unidentified man. When Melton related the details of the incident to him, the man replied: "[T]his is the second time he has done this. He's not under my jurisdiction. He works from one store to the other but I will report him." Melton described her accuser as being a large, African-American man.

At the conclusion of Melton's evidence, the trial court granted Food Lion's motion to strike her claims of defamation and intentional infliction of emotional distress. Food Lion then presented its case, which included the testimony of Derrick Slater, a loss prevention agent for Food Lion.

Slater testified that he was one of the two African-American loss prevention agents employed by Food Lion on the date of the incident in the region in which the Route 1 store is located. Slater stated that he had not worked at the Route 1 store on the date in question, and that the other African-American loss prevention agent, Duane Knight, had never worked at the Route 1 store.

The evidence further showed that Melton was unable to identify Slater as the man who accosted her. She testified that

her accuser was heavier than Slater and had a lighter complexion.

Food Lion also presented evidence concerning its established procedures for confronting a suspected shoplifter, as well as evidence indicating that Melton's accuser did not follow these procedures. Finally, Food Lion called as witnesses the two male managers working at the store on that day. Both denied having received a telephone call from a customer relating the details of this incident.

The jury returned a verdict for Melton on the negligence count, but found in favor of Food Lion on the counts of false imprisonment and insulting words. The trial court denied Melton's motion for a new trial and entered judgment on the verdict. This appeal followed.

Melton first argues that the trial court erred in striking her evidence of defamation. Specifically, she asserts that she presented prima facie evidence of publication of the defamatory remarks, by her testimony that a number of people stopped to listen to the security guard's accusations.

In response, Food Lion contends that the trial court properly struck the defamation count because Melton presented no evidence that any of the bystanders in the parking lot actually heard or understood the man's verbal accusations. Food Lion asserts that Melton was required to identify the persons to whom the statements were published in order to prove the essential element of publication. We disagree with Food Lion.

First, in reviewing a trial court's decision to strike a plaintiff's evidence, we consider the evidence and all reasonable inferences deducible therefrom in the light most favorable to the plaintiff.  Any reasonable doubt regarding the sufficiency of the evidence must be resolved in the plaintiff's favor.  Waters v. Safeway Stores, Inc., 246 Va. 269, 270, 435 S.E.2d 380, 380 (1993).

Second, we set forth the principles of law applicable to our consideration of this defamation claim.  Since the trial court did not state its basis for striking the evidence of this claim, we do not limit our consideration to the issue of publication but examine the evidence as a whole to determine whether it was sufficient to establish a prima facie case.

As pertinent here, a published statement is defamatory and is actionable per se when it imputes to a person the commission of a criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. Great Coastal Express, Inc. v. Ellington, 230 Va. 142, 146, 334 S.E.2d 846, 849 (1985); Carwile v. Richmond Newspapers, Inc., 196 Va. 1, 7, 82 S.E.2d 588, 591 (1954).  A statement imputes the commission of a crime when it refers to matters that would naturally and presumably be understood by those hearing them as charging a crime.  Moss v. Harwood, 102 Va. 386, 388, 46 S.E. 385, 386 (1904); see also Schnupp v. Smith, 249 Va. 353, 360-61, ___ S.E.2d ___, ___ (1995).

In the circumstances presented here, involving a plaintiff who is not a public official or public figure, and an alleged defamatory statement that imputes commission of a crime and thus makes substantial danger to reputation apparent, a negligence standard applies.  See Gazette, Inc. v. Harris, 229 Va. 1, 15, 22-23, 325 S.E.2d 713, 724-25, 729, cert. denied, 472 U.S. 1032 (1985).  The plaintiff must prove by a preponderance of the evidence that the statement was false and that the defendant either knew the statement was false or, believing it to be true, lacked reasonable grounds for such belief or acted negligently in failing to ascertain the truth.  Ingles v. Dively, 246 Va. 244, 251, 435 S.E.2d 641, 645 (1993); Gazette, 229 Va. at 15, 325 S.E.2d at 724-25.

The plaintiff further must prove that there was publication of the defamatory words.  Montgomery Ward & Co. v. Nance, 165 Va. 363, 378, 182 S.E. 264, 269 (1935).  It is sufficient to show that, when the defendant addressed the defamatory words to the plaintiff, another person was present, heard the words spoken, and understood the statement as referring to the plaintiff.  See Snyder v. Fatherly, 158 Va. 335, 350, 163 S.E. 358, 364 (1932); Powell v. Young, 151 Va. 985, 997-98, 144 S.E. 624, 627, rev'd on other grounds, 151 Va. 1002, 145 S.E. 731 (1928); see also Gazette, 229 Va. at 37, 325 S.E.2d at 738.  However, this Court has not addressed specifically the issue raised by the parties here, namely, whether proof of publication under facts such as

these requires direct evidence from a third party who actually heard and understood the defamatory remarks as referring to the plaintiff.

In considering this issue, courts of other jurisdictions have held that circumstantial evidence alone may be sufficient to prove publication of the defamatory remarks.  See, e.g., Wal-Mart Stores, Inc. v. Dolph, 825 S.W.2d 810, 811-12 (Ark. 1992); Lombardi v. Flaming Fountain, Inc., 327 So. 2d 39, 40-41 (Fla. Dist. Ct. App. 1976); Montgomery Ward & Co. v. Cliser, 298 A.2d 16, 22-23 (Md. 1972); Southwest Drug Stores of Mississippi, Inc. v. Garner, 195 So. 2d 837, 841 (Miss. 1967); Harris v. Temple, 392 S.E.2d 752, 753-54 (N.C. Ct. App.), review denied, 395 S.E.2d 678 (N.C. 1990); Gaudette v. Carter, 214 A.2d 197, 200 (R.I. 1965); Duckworth v. First Nat'l Bank, 176 S.E.2d 297, 301 (S.C. 1970).

We agree with this principle and hold that, in order to establish prima facie evidence of publication, a plaintiff is not required to present testimony from a third party regarding what that person heard and understood, or to identify the person to whom the defamatory words were published.  Instead, a plaintiff may prove publication of defamatory remarks by either direct or circumstantial evidence that the remarks were heard by a third party who understood these remarks as referring to the plaintiff in a defamatory sense.

In the present case, it is undisputed that Melton's accuser

made statements imputing to her the commission of the crime of larceny.  Further, as stated above, Melton testified that the security guard stood very close to her and made his accusations in a "very loud tone" of voice during an encounter that lasted approximately ten minutes.  She also testified that, during this time, people were close by, and they stopped "to listen and see what was going on."  We hold that, when considered in the light most favorable to Melton, this evidence was sufficient to permit a reasonable inference that the accuser's words were heard and understood by a third party as referring to Melton and as imputing the commission of a crime.

In addition, we conclude that Melton's testimony provided evidence from which a jury reasonably could infer that her accuser lacked reasonable grounds for his belief that she had committed larceny or acted negligently in failing to ascertain the truth, and that her accuser was a Food Lion employee acting within the scope of his employment.  We also note that, since an award of general damages for defamation is based on a concept of per se injury, Melton was not required to present further proof of injury or loss.  See Snead v. Harbaugh, 241 Va. 524, 528, 404 S.E.2d 53, 55 (1991).  Based on this record, we hold that Melton presented prima facie evidence of defamation, and that the trial court erred in striking her claim.[1]

_____

[1]We reject Food Lion's claim that the trial court's ruling was harmless error since the jury failed to return a verdict for

Melton next argues that the trial court erred in excluding evidence, as part of her case in chief, of Food Lion's original admissions that the man who accosted her was a Food Lion employee acting within the scope of his employment. Melton contends that, although the trial court later permitted Food Lion to amend these responses, the original responses nevertheless retained their character as admissions in the case.

In response, Food Lion asserts that, even if the trial court erred in refusing to allow Melton to introduce these admissions into evidence, any such error was harmless, because the jury learned the substance of these admissions during Melton's cross-examination of Derrick Slater. Further, since the trial

---

Melton on her claim for insulting words. Food Lion contends that the jury necessarily would have returned a similar verdict against Melton had they considered the claim of defamation, because an action for insulting words differs from an action for defamation only in that no proof of publication is necessary to support a claim for insulting words. Tweedy v. J.C. Penney Co., 216 Va. 596, 601 n.6, 221 S.E.2d 152, 156 n.6 (1976). However, this issue is rendered moot by the conclusion, reached in our determination of the second issue in this case, that other reversible error requires a new trial of this case on all claims that are the subject of this appeal, including the claim of insulting words.

court did not instruct the jury that this information could be considered only for impeachment purposes, Food Lion argues that Melton was not prejudiced by the trial court's ruling. We disagree with Food Lion.

We have not been called upon previously to address the issue whether admissions made by written answer to a request under Rule 4:11, which are thereafter amended under Rule 4:11(b), may be introduced as substantive evidence in the trial of the pending action. The effect of these admissions is governed by Rule 4:11(b), which provides in relevant part:

> Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. . . . [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

In this case, since Food Lion was permitted to amend its initial responses, the original admissions could not be used to establish conclusively that Melton was accosted by a Food Lion employee acting within the scope of his employment. Cf. State Farm Mut. Ins. Co. v. Haines, 250 Va. ___, ___, ___ S.E.2d ___, ___ (1995) (decided this day). Thus, the matters addressed in those admissions were returned to the case as issues Melton was required to prove. However, we hold that Melton was entitled to introduce as substantive evidence Food Lion's original responses, since Rule 4:11 contains no provision prohibiting such a use of

admissions that have been amended with leave of court. Therefore, we conclude that the trial court erred in barring Melton from introducing those admissions into evidence as part of her case in chief.

We reject Food Lion's contention that the exclusion of this evidence from Melton's case in chief was harmless error. Although these written admissions were not conclusive of the matters that were addressed, they were deliberately made and thus provided evidence of a persuasive nature that may have furnished the strongest and most convincing evidence of truth. See Tyree v. Lariew, 208 Va. 382, 385, 158 S.E.2d 140, 143 (1967); Watson v. Coles, 170 Va. 141, 150, 195 S.E. 506, 509 (1938). The weight to be given such admissions was an issue for the jury's determination. Tyree, 208 Va. at 385, 158 S.E.2d at 143. Therefore, we hold that Melton was prejudiced by the trial court's ruling. Further, since this error affected the presentation of evidence on the four counts that are the subject of this appeal, Melton is entitled to a new trial on all these counts.[2]

---

[2]Melton does not challenge in this appeal the trial court's ruling striking her evidence of intentional infliction of emotional distress. Thus, Melton is not entitled to a new trial on this count. See Rule 5:17(c). Further, in view of our ruling that Melton is entitled to a new trial on the other counts, we do not reach Melton's assignment of error regarding the trial

For these reasons, we will reverse the trial court's judgment and remand the case for a new trial on the counts of defamation, insulting words, false imprisonment, and negligence.[3]

<u>Reversed and remanded</u>.

---

court's denial of her motion for a new trial.

[3]Based on our disposition of Melton's appeal, we also do not reach Food Lion's assignments of error, which challenge the sufficiency of the evidence to support the jury's verdict and the jury's award of damages.