**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 11-2317

SHIRLEY SHAHEEN,

            Plaintiff – Appellant,

      v.

THE WELLPOINT COMPANIES, INC., d/b/a WellPoint, Inc.,

            Defendant – Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  James R. Spencer, District
Judge.  (3:11-cv-00077-JRS)

Submitted:  May 17, 2012              Decided:  August 3, 2012

Before AGEE, DAVIS, and DIAZ Circuit Judges.

Affirmed by unpublished per curiam opinion.

Richard F. Hawkins, III, HAWKINS LAW FIRM, PC, Richmond,
Virginia, for Appellant.  Karla Grossenbacher, Taron K.
Murakami, SEYFARTH SHAW LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After her termination, Shirley Shaheen filed suit against her former employer, alleging defamation in the context of her termination. The district court entered summary judgment in favor of Shaheen's employer and denied as moot her motion to compel production of certain privileged documents. For the reasons that follow, we affirm.

I.

A.

Shaheen worked for The WellPoint Companies ("WellPoint") in various capacities from March 2004 until October 2010. In March 2006, Shaheen was named a manager of WellPoint's NurseLine, "a 24/7 call-in operation designed to provide quick and immediate advice from nurse associates to insureds of Anthem Blue Cross Blue Shield (a WellPoint subsidiary)." Appellant's Br. 5. As a manager, Shaheen was responsible for supervising approximately twenty NurseLine associates.

Shaheen remained in this position until October 15, 2010, when she was terminated by WellPoint. The chronology leading to her termination began with a September 11, 2010 incident between Shaheen and Linda Taylor, a NurseLine associate. According to Shaheen, she asked Taylor to switch to

2

a cubicle with a "Click-to-Talk" extension, a call feature that Taylor needed to perform her job. Taylor protested, responding "I don't understand why the hell I have to move," and adding that after previously using a cubicle not equipped with Click-to-Talk, "why the hell is it so important that I move now?" J.A. 315. The exchange continued. Ultimately Shaheen asked, "[I]s it really an ordeal to move?," and according to Shaheen, Taylor responded, "[I]t f-king is." Id.

Shaheen subsequently participated in a previously-scheduled online conference with other NurseLine managers and WellPoint personnel, including Kelli Lohmeyer, Director of NurseLine, and Whitney Ingle, the WellPoint Human Resources representative for NurseLine. Shaheen informed Ingle and Lohmeyer of her encounter with Taylor. Ingle and Lohmeyer advised Shaheen that this behavior was grounds for Taylor's termination. To this end, Ingle and Lohmeyer instructed Shaheen to submit a written description of the incident. According to Shaheen, Ingle specifically requested a statement regarding "what the curse words were." Id. 81. Shaheen's subsequent memo indicated that Taylor "responded in a verbally hostile matter," used the "f-word," and that at least two other NurseLine associates—Tammy DeGroft and Pamela Roepke—witnessed the incident. Id. 149.

3

In response to Ingle's instruction, Shaheen and Barbara Wetzler, another NurseLine manager, informed Taylor that she was being terminated based on her behavior and language during the September 11 incident. According to a memo Shaheen prepared for Ingle summarizing the conversation with Taylor, Taylor felt that "she did nothing wrong, she did not curse, was not hostile and was not inappropriate." Id. 155. Shaheen's memo again mentioned that the incident was "witnessed by at least two associates," identifying DeGroft and Roepke, and noting that "both associates were standing with [Taylor] and I [sic] when the incident occurred." Id. And Shaheen added that three other associates—including Charlyn Harrison—"were also on the unit in [the] area to potentially overhear and see [Taylor's] comments and behavior." Id.

Days later, Taylor contacted Ingle to challenge her termination, insisting that she never used the "f-word" during her exchange with Shaheen. In light of Taylor's protestations, Ingle and Lohmeyer opened an investigation into the incident. Initially, they contacted the witnesses identified in Shaheen's memo—including DeGroft, Roepke, and Harrison—asking if they had "overheard or seen anything inappropriate." Id. 458. These witnesses, however, were unable to confirm that Taylor used the "f-word." In fact, Harrison stated that she was not at work when the incident occurred. Unable to confirm the details of

4

the alleged incident via Shaheen's asserted witnesses, Ingle and Lohmeyer scheduled a meeting with Shaheen.

During their meeting with Shaheen, Ingle and Lohmeyer requested a verbatim account of the incident, specifically asking about Taylor's cursing and why no other employees heard the exchange. Shaheen responded that although she could not say why no one overheard Taylor's words, Shaheen never said that she and Taylor were yelling. Apparently dissatisfied with Shaheen's responses, at a meeting on October 15, 2010, Ingle and Lohmeyer terminated Shaheen. Explaining the decision, Ingle and Lohmeyer indicated that they felt that Shaheen had "misrepresented the severity of the situation" between her and Taylor. Id. 326. Specifically, they emphasized that they had to "prompt [Shaheen] four times" before Shaheen restated that Taylor used the "f-word." Id. In Shaheen's personnel file, "misconduct" was noted as the reason for termination. Id. 437.

B.

Shaheen filed a diversity action alleging defamation and defamation per se against WellPoint, and requesting compensatory and punitive damages.[1] Shaheen challenged the

---

[1]Shaheen's complaint also included a breach of contract claim that was subsequently dismissed and is not challenged on appeal.

following six statements: (1) Ingle and Lohmeyer's statements during the October 13 and 15 meetings that Shaheen misrepresented and lied about the facts related to the incident with Taylor; (2) Ingle and Lohmeyer's statement during the October 15 meeting with Shaheen that she "misrepresented the severity" of Taylor's conduct; (3) a note in Shaheen's personnel file that she was terminated for "misconduct"; (4) a statement that Shaheen violated WellPoint's ethics policy by misrepresenting facts related to a company investigation; (5) Lohmeyer's statement in an email to Ingle that Shaheen did not offer any alternatives to terminating Taylor; and (6) Lohmeyer's statement in an email to Ingle that Shaheen decided to terminate, or recommended termination for, Taylor. Shaheen v. WellPoint Companies, Inc., No. 3:11-CV-077, 2011 WL 5325668, at *2 (E.D. Va. Nov. 3, 2011).

WellPoint moved for summary judgment, with Shaheen responding in opposition. Shaheen subsequently moved to compel the production of documents related to WellPoint's investigation of the incident, including communications between WellPoint employees and counsel, and to reopen the depositions of Ingle and Lohmeyer. The district court found that the statements were protected by a qualified privilege that Shaheen had not defeated and therefore, that Shaheen "failed to show the existence of a genuine dispute" as to whether the challenged statements were

6

defamatory or defamatory per se. Id., 2011 WL 5325668, at *6. Accordingly, the district court granted WellPoint's motion for summary judgment and denied Shaheen's motion to compel as moot. Shaheen timely appealed.

## II.

We review the district court's grant of summary judgment de novo, viewing the facts and drawing all reasonable inferences therefrom in the light most favorable to the non-movant. PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119 (4th Cir. 2011). Summary judgment is proper only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Id. We review the district court's denial of a motion to compel discovery for abuse of discretion. Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995).

## III.

A defamation action under Virginia law requires (1) publication, (2) of an actionable statement, and (3) the requisite intent. Chapin v. Greve, 787 F. Supp. 557, 562 (E.D. Va. 1992). To be actionable, a statement must be both false and defamatory. Id. Defamatory statements must be "more than merely unpleasant or offensive;" rather, they must "make the

7

plaintiff appear odious, infamous, or ridiculous." Id. (internal quotation omitted). Certain statements are considered defamatory per se, including those that impute an unfitness to perform the duties of a job or lack of integrity in the performance of duties, or prejudice the party in her profession or trade. Echtenkamp v. Loudon County Pub. Sch., 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003).

In the context of a defamation action, Virginia recognizes a qualified privilege for "[c]ommunications between persons on a subject in which the persons have an interest or duty."[2] Larimore v. Blaylock, 528 S.E.2d 119, 121 (Va. 2000). The qualified privilege, however, "is lost if a plaintiff proves by clear and convincing evidence that the defamatory words were spoken with common-law malice." Smalls v. Wright, 399 S.E.2d 805, 808 (Va. 1991). To defeat the privilege, a plaintiff must

---

[2]As noted by the district court, the publication element of a defamation action requires dissemination of the statement to a third party in a nonprivileged context and "[i]n this regard, it is well settled . . . that communications between persons on a subject in which the persons have an interest or duty are occasions of privilege." Shaheen, 2011 WL 5325668, at *4. (quotation and alteration omitted). In concluding that Shaheen could not defeat WellPoint's qualified privilege, the district court determined that WellPoint was entitled to summary judgment on Shaheen's claims of defamation and defamation per se. See Food Lion, Inc. v. Melton, 458 S.E.2d 580, 584 (Va. 1995) (noting, in the context of a claim of defamation per se, that in addition to proving negligence, a plaintiff "further must prove that there was publication of the defamatory words") (emphasis added).

show "that the communication was actuated by some sinister or corrupt motive such as hatred, revenge, personal spite, ill will, or desire to injure the plaintiff," or "what, as a matter of law, is equivalent to malice, that the communication was made with such gross indifference and recklessness as to amount to a wanton or wilful disregard of the rights of the plaintiff." Southeastern Tidewater Opportunity Project, Inc. v. Bade, 435 S.E.2d 131, 132-33 (Va. 1993).

Shaheen does not seriously dispute that the statements—at least initially—are covered by qualified privilege, and we readily conclude that they are. See Larimore, 528 S.E.2d at 121 (noting that Virginia courts have applied the privilege "in a number of cases involving defamatory statements made between co-employees and employers in the course of employee disciplinary or discharge matters"). She asserts, however, the existence of a genuine dispute on an issue of material fact as to whether WellPoint lost the privilege through its malicious actions. Specifically, she argues that WellPoint lost the privilege via its (1) "reckless disregard for the truth in terms of its gross[ly] deficient investigation" of the incident, (2) "use of disproportionate and/or exaggerated language when describing the 'facts' it believes supported its defamatory statements," and (3) "lack of reasonable cause or belief for believing the allegations against Shaheen to be

9

true." Appellant's Br. 34, 36 (citing Great Coastal Exp., Inc. v. Ellington, 334 S.E.2d 846, 853-54 (Va. 1985)).

We find that Shaheen fails to raise a genuine dispute on the issue of WellPoint's alleged malice. Ingle and Lohmeyer conducted an investigation of the incident in response to Taylor's challenge to her termination, including her denial of using the "f-word." This investigation included interviews of Shaheen and all associates identified by Shaheen as witnesses or potential witnesses. Shaheen's attempts to discredit the investigation as "grossly inadequate," Appellant's Br. 3, are themselves lacking. For example, Shaheen argues that in asking if the associates had "overheard or seen anything inappropriate," J.A. 458, rather than specifically inquiring about the "f-word" or about Taylor, Ingle and Lohmeyer failed to ask "the right questions," Appellant's Br. 36. As Ingle explained, however, it is her practice "not [to] ask leading questions when . . . conduct[ing] an investigation. I wanted to get open and honest answers about . . . what they may or may not have observed." J.A. 458-59.

In another example, Shaheen asserts that Ingle did not include in her talking points with Shaheen that DeGroft said that Taylor was talking loudly, was agitated, and left at some point and did not hear the end of the conversation. In so doing, Shaheen argues that Ingle "downplayed" and "omitted"

10

certain facts supportive of Shaheen's account. Appellant's Br. 18-19. While it is true that DeGroft indicated that she heard Taylor "speaking loudly" (adding that Taylor "often" spoke at a similar volume), J.A. 410, Taylor was not terminated for raising her voice, but "predominantly" for allegedly using the "f-word," id. 444. And on this point, DeGroft offered no corroboration for Shaheen's version of events.

WellPoint's investigation stands in contrast to the incomplete or nonexistent investigations in the cases on which Shaheen relies. See, e.g., A.B.C. Needlecraft Co. v. Dun & Bradstreet, Inc., 245 F.2d 775, 777 (2d Cir. 1957) (finding evidence that defendant published false information with "nothing more to go on than a misunderstood casual remark, with no effort to verify the facts, though to have done so would have been a simple matter" was "clearly sufficient to support a [jury] finding that the defendant acted in wanton and reckless disregard of the plaintiff's rights" (emphasis added)); Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 380 (Minn. 1990) (rejecting claim of qualified privilege where "no investigation occurred to substantiate the charges that [the terminated plaintiff-employee] had stolen merchandise," but rather "[t]he managerial personnel who repeated the accusations simply believed their sources without further investigation" (emphasis added)).

The investigation that led to Shaheen's termination did not suffer from the same failings and thus, Shaheen has failed to raise a genuine dispute on an issue of material fact sufficient to defeat WellPoint's qualified privilege. Accordingly, we affirm the district court's summary judgment ruling.[3] See, e.g., Taylor v. CNA Corp., 782 F. Supp. 2d 182, 202-03 (E.D. Va. 2010) (granting summary judgment to defendants on defamation claim where plaintiff asserted malice but "the record provides no basis for a reasonable jury to make such a conclusion by th[e] elevated [clear and convincing] standard").

IV.

Shaheen further contends that the district court erred in denying her motion to compel as moot. Having reviewed the record and considered Shaheen's argument, we find no abuse of discretion and affirm. See Lone Star, 43 F.3d at 929 (observing that we "afford[] a district court substantial discretion in managing discovery").

---

[3]Because we affirm the district court's conclusion that WellPoint was entitled to summary judgment based on its qualified privilege, we do not address Shaheen's additional argument that the court erred in "suggest[ing]" that the challenged statements were not defamatory per se. Appellant's Br. 39.

Moreover, even were we to conclude that the district court erred, any error was harmless. Shaheen concedes that she sought to compel production of documents protected by the attorney-client privilege, but argues that disclosure was warranted under the "at issue" doctrine. According to Shaheen, the "at-issue" exception to the attorney-client privilege applies because (1) the privilege was asserted as a result of some affirmative act by WellPoint; (2) through the affirmative act, WellPoint put the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny Shaheen access to vital information. See Billings v. Stonewall Jackson Hosp., 635 F. Supp. 2d 442, 446 (W.D. Va. 2009).

We disagree, as WellPoint never asserted advice of counsel as an affirmative defense. Indeed, neither Ingle nor Lohmeyer indicated that they relied on advice of counsel in terminating Shaheen, or in making the alleged defamatory statements. Thus, the "at issue" doctrine does not apply. See, e.g., Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994) ("Advice is not in issue merely because it is relevant . . . . The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."); Billings, 635 F. Supp. 2d at 446

13

("[Defendant] does not assert the defense of advice of counsel in this case; thus, the narrow 'at-issue' exception does not apply."); <u>Hearn v. Rhay</u>, 68 F.R.D. 574, 581 (E.D. Wa. 1975) (noting that cases finding a waiver of attorney-client privilege share a "common denominator" in that "the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit").

V.

For the foregoing reasons, we affirm the judgment of the district court.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

14