NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0315-23

NOAH BANK and
EDWARD SHIN,

      Plaintiffs-Respondents,

v.

MARIE LEE,

      Defendant-Appellant.

> **APPROVED FOR PUBLICATION**
> **April 1, 2025**
> **APPELLATE DIVISION**

Submitted January 23, 2025 – Decided April 1, 2025

Before Judges Marczyk, Paganelli, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-8801-18.

Kimm Law Firm, attorneys for appellant (Michael S. Kimm, on the briefs).

Hartmann Doherty Rosa Berman & Bulbulia LLP, attorneys for respondent Noah Bank (Mark A. Berman and Kelly A. Zampino, on the brief).

Robert J. Basil (The Basil Law Group, PC), attorney for respondent Edward Shin.

The opinion of the court was delivered by

MARCZYK, J.A.D.

Defendant Marie Lee appeals from the trial court's December 19, 2022 order dismissing her Conscientious Employee Protection Act (CEPA)[1] claim and the court's August 22, 2023 order granting plaintiffs' summary judgment motions dismissing her defamation and trade libel claims. Following our review of the record and the applicable legal principles, we affirm.

As a matter of first impression, we consider the procedural issue of whether the trial court properly considered plaintiffs' motion to dismiss under Rule 4:6-2. Specifically, we address whether the court properly entertained plaintiffs' dismissal motion after they had filed an answer to defendant's counterclaim asserting a defense under Rule 4:6-2(e) or whether plaintiffs were required to file the motion prior to filing their answer. We conclude the trial court correctly considered the motion under Rule 4:6-2, when it is read in conjunction with Rule 4:6-3.

I.

Plaintiff Edward Shin was the CEO of plaintiff Noah Bank. Lee was employed by Noah Bank as a loan officer and later vice-president. Lee claimed she observed, during her employment, Shin engage in various criminal activities, including paying fake broker fees to his friend James Kim. Lee

---

[1] N.J.S.A. 34:19-1 to -14.

resigned from Noah Bank in 2012. She signed a post-employment confidentiality and non-disparagement agreement upon her separation.

In December 2018, plaintiffs filed a complaint against Lee alleging breach of the confidentiality and non-disparagement provisions of the post-employment agreement. Plaintiffs alleged Lee retained confidential information from Noah Bank and used those documents to file a qui tam lawsuit and a separate Racketeer Influenced and Corrupt Organization Act action against Noah Bank.[2] Lee answered and filed a counterclaim alleging a violation of CEPA, defamation, and trade libel. Plaintiffs filed an answer to Lee's counterclaims reserving the affirmative defense that Lee "fail[ed] to state a claim upon which relief can be granted." In May 2019, Shin was arrested for, among other offenses, conspiracy to commit bank bribery.[3]

In August 2019, Noah Bank moved to dismiss Lee's counterclaims.[4] The trial court denied Noah Bank's motion, holding the motion was untimely under Rule 4:6-2. Noah Bank's motion for reconsideration was also denied. The

---

[2] The United States Attorney subsequently utilized the information from Lee's qui tam case to prosecute Shin.

[3] Plaintiffs both subsequently dismissed their complaints against Lee.

[4] Shin did not join the initial motion to dismiss the CEPA claim, but rather moved to dismiss the counterclaim without prejudice and stay the case pending the resolution of his criminal case.

United States subsequently moved to intervene to stay the case pending the conclusion of Shin's federal criminal trial, which the court granted. Shin was convicted in May 2022 of various offenses, including conspiracy to commit bank and wire fraud and conspiracy to commit bank bribery.[5]

In 2018, before Shin's criminal trial commenced, Kim allegedly told Lee that Shin "blacklisted" her and told "all the local Korean-American banks" she was a criminal and that she stole bank secrets. Lee also alleged in her complaint Shin called her "a bitch, a traitor, and that she [sh]ould be banished from society." According to Kim, banks would not hire her "because she was deemed to [have stolen] bank secrets and . . . help[ed] the federal investigators build a case against Noah Bank."

At Shin's federal criminal trial, Lee testified:

> Q.    When you approved these broker fee checks to be paid to . . . Kim and his companies, did you know and understand that . . . Kim had not earned these fees?
>
> A.    Yes.
>
> Q.    Why did you approve them anyway?

---

[5]  Specifically, the jury convicted Shin of:  conspiracy to commit bank fraud and wire fraud, 18 U.S.C. § 1349; conspiracy to commit bank bribery, 18 U.S.C. §§ 371 and 215(a)(2); bank bribery, 18 U.S.C. § 215(a)(2); theft, embezzlement, or misapplication of bank funds by a bank officer, 18 U.S.C. § 656; conspiracy to commit loan fraud, 18 U.S.C. §§ 371 and 1014; and conspiracy to commit bank fraud, 18 U.S.C. § 1349.

> A.    Because . . . Shin asked me to do that.
>
> Q.    Why would you follow his instruction?
>
> A.    I didn't have any courage to tell the truth.  I just wanted to keep my job secure.

Lee testified she knew her approvals of those checks were "wrong," and that she was appearing as a witness pursuant to a "nonprosecution agreement."  Lee concedes she "did testify that she was involved in . . . Shin's illegal acts, by processing the loans."  She also acknowledges "[t]he [g]overnment was of the view that her processing loan closings under the direction of . . . Shin, might be construed as her being a 'co-conspirator' to . . . Shin."

Once the stay was lifted, plaintiffs moved to dismiss the CEPA claim for failure to state a claim and failure to comply with the statute of limitations.[6] The court rejected Lee's argument that the motion was untimely under Rule 4:6-2 and gave her additional time to file a substantive opposition.  On December 19, 2022, the court granted the motion to dismiss the CEPA claim, noting:  "Defendant has not offered any substantive opposition.  The facts demonstrate entitlement to the relief."

Noah Bank subsequently moved for summary judgment regarding Lee's defamation and trade libel claims, and Shin joined the motion.  On August 22,

---

[6]  The prior judge managing the case had retired, and a new judge lifted the stay and also ruled on the newly filed motions to dismiss.

5

2023, the court granted the motion. Relevant to this appeal, the court held that the description of Lee as a "criminal" was substantially true. It noted Lee "admitted under oath to criminal activity." The court stated Lee "admit[ted] to having been aware of the criminal acts of Shin . . . and to having taken steps through her position at Noah Bank to help facilitate same. That she did so under orders from Shin . . . is not a defense to criminal activity." It also noted it was true that Lee had revealed bank secrets to outsiders, interfered with the conduct of the banking business at Noah Bank, and interfered with the purchase of Noah Bank. The court determined Shin's alleged statements that Lee was "a bitch" and "a traitor" and should "be banished from society" were opinions and not actionable. Regarding the trade libel claim, in addition to the court determining Shin's alleged statements were true, it also held Lee had not marshalled evidence creating a genuine issue of material fact with respect to damages.

## II.

Lee argues the court erred in granting plaintiffs' Rule 4:6-2(e) motion to dismiss for failure to state a claim. She principally asserts the motion was untimely. Lee highlights that the prior court had denied Noah Bank's Rule 4:6-2(e) motion in August 2019, concluding the motion was untimely because Noah Bank did not file it before filing an answer; and Lee argues Shin's

6

motion should be denied for the same reason.  Lee's argument centers on her reading of <u>Allstate New Jersey Insurance Co. v. Cherry Hill Pain & Rehabilitation Institute</u>, 389 N.J. Super. 130 (App. Div. 2006), which she interprets to mean "that any motion invoking <u>Rule</u> 4:6-2(e), by the plain text of the rule, is required to be made before an answer."  (Emphasis omitted).

Lee also contends the time for reconsideration of the initial judge's August 2019 denial of the motion to dismiss had to be filed by September 2019, relying on <u>Rule</u> 4:49-2.  Moreover, Lee asserts the law of the case doctrine precluded the second judge from reconsidering the prior denial of plaintiffs' dismissal motion.

Plaintiffs counter that Lee failed to provide any substantive opposition to their argument that CEPA does not protect an employee from post-employment retaliatory conduct.  They also contend their motion to dismiss was not untimely under <u>Rule</u> 4:6-2, and the law of the case doctrine did not bar the second judge from ruling on plaintiffs' motion to dismiss the CEPA claims.

Appellate review of a "motion to dismiss for failure to state a claim pursuant to <u>Rule</u> 4:6-2(e)" is de novo.  <u>Am. Civ. Liberties Union of N.J. v. Cnty. Prosecutors Ass'n of N.J.</u>, 257 N.J. 87, 100 (2024).  This court applies "the same standard that governs the trial court in that inquiry, affording to the" non-movant "'every reasonable inference of fact,' and searching the complaint

'in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). Yet, "if the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Ibid. (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 107 (2019)).

Lee argues the judge erred by considering plaintiffs' motion to dismiss because it was not filed prior to their answer. The defense of failure to state a claim upon which relief can be granted may be raised by motion or as an enumerated defense in an answer. Rule 4:6-2, in pertinent part, provides as follows:

> Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses, unless otherwise provided by [Rule] 4:6-3, may at the option of the pleader be made by motion, with briefs: . . . (e) failure to state a claim upon which relief can be granted . . . . If a motion is made raising any of these defenses, it shall be made before pleading if a further pleading is to be made.

The comments to Rule 4:6-2 provide as follows:

> [Rule 4:6-2] identifies the six dispositive defenses which may be raised either by answer or by motion, but, if by motion, then before the party's required

responsive pleading. . . . The rule must be read in conjunction with [Rule] 4:6-3, which requires, as to defenses (b), (c), and (d), that if initially raised by answer, a motion raising the defense must also be made within [ninety] days after service of the answer in which the defense was asserted. <u>Defenses (a), (e), and (f), whether raised by motion or answer, are required, on a party's application to be heard and determined before trial unless the court otherwise orders</u>.

[Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 4:6-2 (2024) (emphasis added).]

<u>Rule</u> 4:6-3 requires a party who initially stated a <u>Rule</u> 4:6-2(b), (c), or (d) defense in their answer to raise it by filing a motion within ninety days after service of the answer. However, <u>Rule</u> 4:6-2(a), (e), and (f) defenses do not have that ninety-day requirement, but the defenses must be "heard and determined before trial on application of any party, unless the court for good cause orders that the hearing and determination thereof be deferred until the trial." <u>R.</u> 4:6-3. Thus, <u>Rule</u> 4:6-2 contemplates, despite language suggesting that motions made asserting certain defenses must be made prior to filing an answer, that a party who raises a <u>Rule</u> 4:6-2(e) defense in its answer will be permitted to make an application to the court prior to trial. This is evident when <u>Rule</u> 4:6-2 is considered in context with <u>Rule</u> 4:6-3.

Moreover, as the comments to <u>Rule</u> 4:6-2 note, because motions filed under this rule are "often complex and consequential" like motions for

summary judgment, "the [sixteen-]day cycle for service and response of [Rule] 1:6-3 was frequently insufficient and adjournments had been routinely granted. The rule [was amended in 2020 and] now provides instead for the [twenty-eight-]day cycle of [Rule] 4:46-1 (summary judgment)."  Pressler & Verniero, cmt. 4.1.1 on R. 4:6-2.  Implicit in this rule change is the recognition that motions filed under Rule 4:6-2(e), like motions for summary judgment, are routinely filed after an answer has been filed and during the course of discovery or following discovery prior to trial.

Furthermore, in certain situations, such as those involving the affidavit of merit (AOM), defendants are not permitted to move to dismiss until after a certain period of time has passed after they file an answer.  N.J.S.A. 2A:53A-27.  The failure to provide an AOM is considered "a failure to state a cause of action" under N.J.S.A. 2A:53A-29 and warrants a dismissal with prejudice.  A.T. v. Cohen, 231 N.J. 337, 346 (2017) (quoting N.J.S.A. 2A:53A-29).  These AOM motions cannot, based on the express language of N.J.S.A. 2A:53A-27, be filed until after an answer has been filed asserting a defense under Rule 4:6-2(e).  We also observe that Rule 4:6-3 expressly allows motions to be filed for defenses (b), (c), and (d) after an answer has been filed which raises these defenses.  We discern no reason why the same cannot be done for defenses raised under Rule 4:6-2(e).

10

Lee relies on <u>Allstate</u> in support of her interpretation of <u>Rule</u> 4:6-2(e). However, that reliance is misplaced, because in <u>Allstate</u>, we did not address the issue before us here. Rather, in <u>Allstate</u>, we addressed the plaintiffs' argument that <u>Rule</u> 4:6-2 required that a motion to dismiss for failure to state a claim be filed prior to further pleadings. 389 N.J. Super. at 136. In other words, the plaintiffs argued the defendants "were obligated by the rule to file a motion to dismiss for failure to state a cause of action . . . rather than file an answer." <u>Ibid.</u> We noted the trial court correctly determined <u>Rule</u> 4:6-2 does not prohibit a defendant from raising a <u>Rule</u> 4:6-2(e) defense in an answer. <u>Id.</u> at 137.

Here, plaintiffs raised a <u>Rule</u> 4:6-2(e) defense in their answers to Lee's counterclaim and filed motions to dismiss prior to trial. Where a party preserves this defense, they are permitted to raise the defense during the course of litigation by way of motion, consistent with <u>Rules</u> 4:6-2 and 4:6-3. Accordingly, the motion was not untimely, and the judge properly considered the application.[7]

Turning to Lee's argument that plaintiffs' motion for reconsideration was untimely, we note her reliance on <u>Rule</u> 4:49-2 is misplaced because the

[7] We will refer this matter to our Civil Practice Committee for further consideration because of the potential ambiguity in <u>Rule</u> 4:6-2 and <u>Rule</u> 4:6-3.

twenty-day period referenced in that rule for the purposes of filing a motion for reconsideration only applies to final judgments and orders. See R. 4:49-2; Rusak v. Ryan Auto., L.L.C., 418 N.J. Super. 107, 117 n.5 (App. Div. 2011). We treat the denial of a motion to dismiss as interlocutory. Parker v. City of Trenton, 382 N.J. Super. 454, 457 (App. Div. 2006). Therefore, the court did not err in considering plaintiffs' motions.

We likewise are unpersuaded by Lee's law of the case doctrine argument. A motion to reconsider interlocutory orders may be made at any time until final judgment in the court's discretion. See Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987). The court here had the discretion to reconsider the decision from the prior judge. Toto v. Princeton Twp., 404 N.J. Super. 604, 618 (App. Div. 2009). Application of the law of the case doctrine is discretionary, and not a rule of law. Franklin Med. Assocs. v. Newark Pub. Schs., 362 N.J. Super. 494, 512 (App. Div. 2003). We have noted courts need not "slavishly follow an erroneous or uncertain interlocutory ruling," Gonzalez v. Ideal Tile Importing Co., 371 N.J. Super. 349, 356 (App. Div. 2004), but are instead entitled to reconsider and set aside prior interlocutory orders and rulings in the interest of justice up until the entry of final judgment, Rule 4:42-2; Lombardi v. Masso, 207 N.J. 517, 539 (2011). The trial court here was not compelled to follow the rulings of the prior judge.

12

Moreover, although Lee's appeal centers on procedural challenges to the court's order, we note the court did not err in granting plaintiffs' motions. Lee pleaded no cognizable claim under CEPA because the retaliation she alleged was "blacklisting," which this court has ruled cannot sustain a CEPA claim. See Beck v. Tribert, 312 N.J. Super. 335, 345 (App. Div. 1998).

CEPA protects "employees" who "report illegal or unethical workplace activities." Sauter v. Colts Neck Volunteer Fire Co. No. 2, 451 N.J. Super. 581, 588 (App. Div. 2017) (quoting Mehlman v. Mobil Oil Corp., 153 N.J. 163, 179 (1998)). CEPA prevents an employer's "retaliation" for such reports. Young v. Schering Corp., 141 N.J. 16, 26 (1995) (quoting LePore v. Nat'l Tool & Mfg. Co., 115 N.J. 226, 228 (1989)). N.J.S.A. 34:19-3 provides, in relevant part, that an

> employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . .

13

This court has rejected the claim that "blacklisting and slandering" following employment is an adverse employment action cognizable under CEPA. Beck, 312 N.J. Super. at 343-45. CEPA "covers action taken only with respect to the employment relationship established between the employer and employee." Young, 141 N.J. at 32 (quoting Young v. Schering Corp., 275 N.J. Super. 221, 239-40 (App. Div. 1994)). It does not impose liability for "post-employment conduct" former employers may take against former employees. Zubrycky v. ASA Apple, Inc., 381 N.J. Super. 162, 168 n.2 (App. Div. 2005) (citing Young, 141 N.J. at 30; Beck, 312 N.J. Super. at 343-44). Accordingly, interference with "prospective employment opportunities" following the end of employment does not violate CEPA. Young, 141 N.J. at 32 (quoting Young, 275 N.J. Super. at 239-40).

## III.

Lee argues the court erred by dismissing her defamation and trade libel claims. She contends that describing someone as a "criminal" is defamation per se when there is no "conviction" supporting that description, and her testimony in an unrelated "privileged"[8] context cannot provide the "truth" defense for a defamation claim. She contends she did not admit to a crime

---

[8] Lee does not identify any specific privilege in her brief.

14                                                                      A-0315-23

and, therefore, the court erred by dismissing her claims based on her testimony in Shin's trial.  Lee also argues the court should draw "an adverse inference" against Shin "on his motion for summary judgment" because he "opted to invoke his right against self-incrimination."

Shin argues a conviction is not necessary for someone to be truthfully labeled a criminal.  Moreover, he asserts all the alleged defamatory statements were true or rhetorical hyperbole, which are not actionable.  He further contends Lee has not identified any question, in which Shin asserted his Fifth Amendment privilege, which deprived her of information needed to avoid summary judgment.  Noah Bank argues Shin's alleged defamatory statements were either substantially true or non-actionable statements of opinion.  It argues Lee's "testimony at Shin's trial makes clear that she knowingly participated in the criminal conduct of which . . . Shin and . . . Kim were convicted."

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge.  Townsend v. Pierre, 221 N.J. 36, 59 (2015).  Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving

15

party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party, there is no 'genuine issue for trial.'" Alfano v. Schaud, 429 N.J. Super. 469, 474-75 (App. Div. 2013) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

The court found Lee "admitted that she approved the broker fee checks to be paid to . . . Kim and his companies, knowing that he had not earned those fees," as reflected in her testimony at Shin's trial. It found it was "undisputed that . . . Lee testified clearly and unequivocally that she knowingly authorized payment of fraudulent commissions." It further noted Lee "admitted under oath to criminal activity." The court stated Lee "admit[ted] to having been aware of the criminal acts of Shin . . . and to have taken steps through her position at Noah Bank to help facilitate same. That she did so under orders from Shin . . . is not a defense to criminal activity." The court concluded the "statement that . . . Lee is a criminal is supported by the undisputed evidence" of her "conduct" and granted summary judgment. In so holding, the court rejected Lee's argument "that accusing . . . Lee of being a criminal is defamation, per se."

Regarding the trade libel claim, the court also found Lee failed to

provide evidence of "specifics as to job opportunities lost, coupled with an inability to quantify any damages," as required in trade libel doctrine. We affirm substantially for the reasons set forth by the court but add the following.

"Our law of defamation is grounded on the principle that people should be free 'to enjoy their reputations unimpaired by false and defamatory attacks.'" Fees v. Trow, 105 N.J. 330, 336 (1987) (quoting Swede v. Passaic Daily News, 30 N.J. 320, 321 (1959)). "A defamatory statement, generally, is one that subjects an individual to contempt or ridicule, one that harms a person's reputation by lowering the community's estimation of him or by deterring others from wanting to associate or deal with him." Petro-Lubricant Testing Lab'ys, Inc. v. Adelman, 233 N.J. 236, 253 (2018) (quoting Durando v. Nutley Sun, 209 N.J. 235, 248-49 (2012)). To recover for harm caused by such a statement, plaintiffs must demonstrate three elements: (1) the defendant "made a false and defamatory statement;" (2) "the statement was communicated to another person (and not privileged);" and (3) the defendant acted with fault by either a negligence or actual malice standard. G.D. v. Kenny, 205 N.J. 275, 292-93 (2011); accord Neuwirth v. State, 476 N.J. Super. 377, 390-93 (App. Div. 2023) (discussing the two fault standards).

"The threshold issue" of whether a statement has a defamatory meaning is a matter of law "to be decided by the court." Molin v. Trentonian, 297 N.J.

17

Super. 153, 156 (App. Div. 1997). Courts ordinarily use a context- and content-dependent test regarding the statement's "fair and natural meaning" as understood "by reasonable persons of ordinary intelligence." G.D., 205 N.J. at 293 (quoting Romaine v. Kallinger, 109 N.J. 282, 290 (1988)). Some statements, however, are so injurious they are "defamatory as a matter of law." Romaine, 109 N.J. at 291. These include statements "falsely attributing criminality to an individual." G.D., 205 N.J. at 293 (citing Romaine, 109 N.J. at 291); see, e.g., Lawrence v. Bauer Publ'g & Printing, 89 N.J. 451, 456, 459-60 (1982) (statement that "forgery charges may loom" was "little different from an assertion that plaintiffs have actually been charged"); see also Food Lion, Inc. v. Melton, 458 S.E.2d 580, 584 (Va. 1995) ("A statement imputes the commission of a crime when it refers to matters that would naturally and presumably be understood by those hearing them as charging a crime."). Describing Lee as a criminal or that she engaged in "criminal behavior" naturally attributed criminality to her; moreover, the unambiguous import of that description was to cast doubt on Lee's reputation and demonstrates the statement had a defamatory meaning.

That said, true statements are "not actionable as defamation." Hart v. City of Jersey City, 308 N.J. Super. 487, 492 (App. Div. 1998). A defamation claim may succeed only where the defamatory statement is also false, because

18

the truth is "absolutely protected under the First Amendment" from defamation liability. G.D., 205 N.J. at 293 (quoting Ward v. Zelikovsky, 136 N.J. 516, 530 (1994)); see also Senna v. Florimont, 196 N.J. 469, 496 (2008) ("[N]o business owner will ever be liable for the truth he tells about a rival."). Truth is a defense even when a statement contains "minor inaccuracies," so long as it contains the "substantial truth." Id. at 294 (quoting Masson v. New Yorker Mag., Inc., 501 U.S. 496, 516 (1991)). Hence, an action will not lie "so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" Masson, 501 U.S. at 517 (quoting Heuer v. Kee, 59 P.2d 1063, 1064 (Cal. Dist. Ct. App. 1936)). "Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" Ibid. (quoting R. Sack, Libel, Slander, and Related Problems 138 (1980)); accord Hill v. Evening News Co., 314 N.J. Super. 545, 552 (App. Div. 1998) ("A minor misstatement 'which is immaterial to, or does not go to the gist or sting of the libel does not render an otherwise true statement defamatory.'" (quoting Herrmann v. Newark Morning Ledger Co., 48 N.J. Super. 420, 431 (App. Div. 1958))).

Lee argues Shin's assertion is untruthful because she was not convicted of a crime. Although Lee was not convicted of a crime, she testified under oath that she agreed with Shin to approve broker fee checks she knew were

illegal. Lee conceded she "did testify that she was involved in . . . Shin's illegal acts, by processing the loans . . . ." She further acknowledged, "[t]he [g]overnment was of the view that her processing loan closings under the direction of . . . Shin, might be construed as her being a 'co-conspirator' to . . . Shin." Accordingly, the court did not err in finding Shin's description of Lee as a criminal or that she engaged in criminal behavior was substantially true.

The Court in G.D. considered whether statements about a plaintiff's commission of a crime are actionable as defamation "when the conviction [wa]s the subject of an expungement order." 205 N.J. at 282. G.D. was convicted of possession and distribution of cocaine; after his release from prison, he worked as an aide for a local politician. Id. at 283-84. Five years after he left the politician's employ, the court expunged "any record of his 1993 drug conviction as well as any record of his arrest and the charges." Id. at 284. One year later, the local politician ran for a higher office, and his opponent published flyers describing his former aide, G.D., as "a DRUG DEALER who went to JAIL for FIVE YEARS for selling coke near a public school." Id. at 286. G.D. contended the statements were false because his "conviction—as a matter of law—is deemed not to have occurred." Id. at 283. The defendants argued that "the expungement statute does not obliterate the history or memory of a criminal conviction, or impinge on the right to speak

20

freely." Id. at 291.

The Court held the statements were substantially true. Id. at 304-07. It recognized that "under the expungement statute, as a matter of law, an expunged conviction is 'deemed not to have occurred.'" Id. at 302 (quoting N.J.S.A. 2C:52-27). Even so, the Court declined to "impose a regime of silence on those who know the truth" by subjecting them to defamation liability for speaking about criminalized activity that, in fact, occurred. Ibid. The holding therefore rested on the substantial "truthfulness of the assertions in the flyers," notwithstanding the absence of a conviction. Id. at 307.

Although factually distinguishable, G.D. provides some guidance here. The Court in G.D. rejected arguments that a conviction is necessary to use the term "criminal" without opening the door to defamation liability. It was unwilling to impose civil penalties "on those who know the truth" about criminalized acts that a defamation plaintiff, in fact, committed. Id. at 302.

This comports with dictionary definitions suggesting that a conviction is sufficient, but not necessary, for the term "criminal" to apply. Black's Law Dictionary defines a criminal as someone "involved in illegal activities; one who has committed a criminal offense." Black's Law Dictionary 470 (11th ed. 2019). That dictionary provides an alternate definition of a criminal as someone "who has been convicted of a crime." Ibid. Other dictionaries give

21

separate definitions of "criminal" as one who has either "committed a crime" or "been convicted of a crime." Webster's Ninth New Collegiate Dictionary 307 (1987); Merriam-Webster's Collegiate Dictionary 308 (11th ed. 2014) (same); The American Heritage Dictionary of the English Language 313 (1976) ("A person who has committed or been legally convicted of a crime."). Taken together, dictionary definitions and case law establish that a person may truthfully fit the description of "criminal" irrespective of whether there is a record of a successful prosecution against them.

We likewise agree the court properly dismissed Lee's trade libel claims. "Trade libel" is a "tort addressing aspersions cast upon one's business operation." Patel v. Soriano, 369 N.J. Super. 192, 246 (App. Div. 2004). The tort is similar to defamation, and one statement may "effectuate both harms." Id. at 248. Under this cause of action, the plaintiff must prove the defendant made a "false" communication "concerning the plaintiff, or [the] plaintiff's property or business" to a third party, and that communication played "a material part in inducing others not to deal with [the] plaintiff." Enriquez v. W. Jersey Health Sys., 342 N.J. Super. 501, 524 (App. Div. 2001). Moreover, whereas defamation per se may not require proof of damages, "proof of damages is essential in an action for trade libel." Patel, 369 N.J. Super. at 247.

Falsity is an element of trade libel. <u>Enriquez</u>, 342 N.J. Super. at 524. Plaintiffs must "prove that the statement is false, and that [the] defendant made the statement knowingly or recklessly." <u>Patel</u>, 369 N.J. Super. at 248. Trade libel and defamation are aligned in this requirement, and although trade libel lacks defamation's fulsome case law, Lee offers no argument why a statement considered true under that doctrine should not also be true under trade libel. Accordingly, the court did not err in dismissing the trade libel claim, given the statements at issue were substantially true.

Lastly, although Lee argues the court should have drawn an "adverse inference" against Shin because he invoked his right against self-incrimination, she fails to explain how such an inference would rescue her deficient legal argument. When a party invokes the Fifth Amendment, "it is permissible for the trier of fact" in a civil proceeding "to draw adverse inferences" of that party's "guilt," unless "the penalty imposed at the conclusion of the proceeding is so severe as to effectively destroy the privilege." <u>State, Dep't of L. & Pub. Safety v. Merlino</u>, 216 N.J. Super. 579, 587 (App. Div. 1987). Lee does not suggest what adverse inference should be drawn or how Shin's invocation of the right impacted her defamation claims. She states only that the failure to draw some adverse inference "warrants reversal." She does not explain how an adverse inference would save her claims from summary judgment.

A-0315-23

Accordingly, we conclude the court did not err by not drawing an adverse inference.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Hadley*

Clerk of the Appellate Division

A-0315-23